[751 NYS2d 4]

Roundabout Theatre Company, Inc., et al., Respondents, v Continental Casualty Company, Appellant, et al., Defendant.

First Department, November 26, 2002

1

### APPEARANCES OF COUNSEL

*Robert M. Sullivan* and *William M. Fennell* of counsel, New York City *(Nicoletti, Hornig, Campise & Sweeney,* attorneys), for respondents.

*Eric A. Portuguese* of counsel, New York City *(John Sandercock* on the brief; *Lester Schwab Katz & Dwyer, LLP,* attorneys), for appellant.

### OPINION OF THE COURT

GONZALEZ, J.

This appeal requires us to determine whether the business interruption clause of an insurance policy issued to plaintiff theatre company covers losses occasioned by an order of the City of New York closing the street and denying access to the insured's theatre due to a construction accident in the area, notwithstanding the absence of any physical damage to the theatre premises. Because the language of the business interruption clause in the policy clearly and unambiguously provides coverage only where there is direct physical loss or damage to the insured's property, we reverse the IAS court's determination and grant summary judgment to defendant insurer declaring that plaintiffs' losses are not covered by the subject policy.

In February 1998, plaintiff Roundabout, a nonprofit theatre company, began staging a production of the musical Cabaret at the Kit Kat Klub (the theatre), located at 124 West 43rd Street.

On the morning of July 21, 1998, a portion of a 48-story exterior elevator being used in the construction of the Conde Nast building, located 65 feet west on the south side of West 43rd Street, collapsed into the street and adjacent buildings. As the Conde Nast building and the theatre were separated by one building, the theatre sustained only minor damage to its roof and air conditioning system, which was repaired within one day. However, because of the substantial damage to the area and the danger from the partially collapsed scaffold, the City's Office of Emergency Management closed West 43rd Street between Broadway and 6th Avenue until August 18, 1998. As a result, the theatre became inaccessible to the public and Roundabout was forced to cancel 35 performances of Cabaret. Roundabout sustained substantial monetary losses in the form of ticket and production-related sales as well as additional expenses incurred in reopening the production.

At the time of the accident, defendant Continental insured Roundabout under a "Theatrical Package Policy," which included, inter alia, business interruption coverage. The "Insuring Agreement" provided:

> "The Company agrees to pay to the Insured such loss * * * as the Insured shall necessarily incur in the event of interruption, postponement or cancellation of an Insured Production *as a direct and sole result of loss of, damage to, or destruction of property or facilities (including the theatre building occupied * * * by the Insured, and [certain equipment]),* contracted by the Insured for use in connection with such Production, *caused by the perils insured against,* and occurring during the term of coverage * * *" (emphasis added).

The "Perils Insured" clause of the policy provided: "This coverage insures against *all risks of direct physical loss or damage to the property described in Paragraph I* [i.e., the theatre building or facilities] * * *, *except as hereinafter excluded*" (emphasis added).

The policy further included a "War Risk and Governmental Authority and Civil Commotion Exclusion" which provided: "The Company shall not be liable for any loss caused directly or indirectly by * * * Civil Commotion assuming the proportions of or amounting to a popular rising, riot, martial law of [*sic*] the act of any lawfully constituted authority."

On August 20, 1998, Roundabout, through its insurance broker J&H Marsh & McLennan (J&H Marsh),[1] provided notice of its loss to Continental. On August 31, 1998, Continental disclaimed coverage on the ground that the policy provided coverage only where there had been "physical damage to the property or facilities contracted by the Insured," and because the loss was not covered due to the civil commotion exclusion.

On March 4, 1999, Roundabout commenced an action against its former insurance broker DeWitt, alleging that DeWitt was negligent in failing to obtain coverage for business interruption loss resulting from off-site property damage. In its complaint, Roundabout alleged that although DeWitt had obtained from Chubb Group the necessary coverage for losses due to off-site property damage with respect to a different property, DeWitt had failed to follow its instructions to obtain the same coverage for the Kit Kat Klub location.[2] Roundabout and DeWitt reached a settlement in this action whereby DeWitt agreed to pay Roundabout $990,063 in exchange for an assignment to DeWitt of Roundabout's rights and causes of action against Continental.

In February 2000, Roundabout and DeWitt, as assignee of the rights of Roundabout, commenced the instant action against Continental for breach of the insurance contract, and against J&H Marsh for breach of contract and negligence in failing to properly determine Roundabout's insurance needs.[3] In its answer, Continental's second and fourth affirmative defenses asserted, consistent with its disclaimer, that the policy did not provide coverage for business interruption loss resulting from off-site property damage or from the act of any lawfully constituted authority.

In June 2001, Continental moved for summary judgment and a for a declaration that the loss arising out of the collapse of the elevator at the Conde Nast building was not covered under the Continental policy. It argued there was no coverage because there was no direct, physical loss to Roundabout's fa-

---

1. The subject policy was initially procured for Roundabout by the DeWitt Stern Group (DeWitt), Roundabout's former broker. Roundabout dropped DeWitt and switched to J&H Marsh in April 1998, three months before the collapse at the Conde Nast building.

2. The Chubb policy covered business interruption losses "which you incur due to the actual interruption of your operations * * * when a civil authority prohibits access to your covered property because of direct physical loss or damage caused by a covered cause of loss *to property not otherwise excluded in the vicinity of your covered property*" (emphasis added).

3. The causes of action against J&H Marsh are not at issue on this appeal.

cilities and because the loss was excluded under the policy's civil commotion exclusion. Plaintiffs cross-moved for summary judgment on the issue of coverage, arguing that coverage existed because this was an "all risk" policy, the loss at issue was "fortuitous," and because the policy's reference to "loss of, damage to, or destruction of property or facilities" should be read to include "loss of use" of the premises. Plaintiffs also contended that the civil commotion exclusion applies only to actions by government "in violent, war-like circumstances," which are not present here.

In its order entered January 16, 2002, the IAS court denied Continental's motion and granted summary judgment to Roundabout on the issue of coverage only. It found that because the Continental policy was an "all risk" policy, the loss was presumptively covered and the burden shifted to the insurer to demonstrate that the loss was expressly excluded by the terms of the policy. The court rejected Continental's argument that the policy required physical damage to the insured's property, finding that the language "loss of, damage to, or destruction of [the insured's] property or facilities" encompasses a "loss of use" of the property. Otherwise, the court concluded, the phrase "loss of" would be redundant to "destruction of" the property. The court also ruled that the civil commotion exclusion did not apply since it was intended to cover occurrences arising from "war, civil insurrection or actions by government in violent, war-like circumstances." This appeal followed.

Continental makes two arguments in support of reversal. First, it argues that the IAS court misconstrued the unambiguous policy language requiring physical damage to the insured's property for covered losses and erroneously placed the burden on the insurer to demonstrate the applicability of a policy exclusion. Second, it contends that the civil commotion exclusion is applicable to the circumstances of this case and excludes coverage. We find sufficient merit in Continental's first argument to reverse the order on appeal, and, given this result, we do not reach the second argument.

At the outset, Continental argues that the IAS court erroneously held that the burden of proof lay with Continental to demonstrate that a policy exclusion was applicable. We agree. This aspect of the court's holding was premised on its characterization of the policy as an "all risk" policy, which, the court stated, allows recovery "for all losses not resulting from misconduct or fraud unless there is a specific policy provision excluding coverage of the loss in express terms," citing *M.H.*

*Lipiner & Son, Inc. v Hanover Ins. Co.* (869 F2d 685 [2d Cir 1989]).

Overlooked by the IAS court, however, is the well-established principle that a policyholder bears the initial burden of showing that the insurance contract covers the loss (*see Morgan Stanley Group Inc. v New England Ins. Co.*, 225 F3d 270, 276 [2d Cir 2000]; *Chase Manhattan Bank v Travelers Group,* 269 AD2d 107, 108; *Simplexdiam, Inc. v Brockbank*, 283 AD2d 34, 37). Continental argued before the IAS court that the loss at issue was not covered under the terms of the "Perils Insured" and "Insuring Agreement" provisions of the insurance contract. Since, as discussed below, these provisions do not provide coverage for off-site property damage, the court erred in finding that the burden of proof had shifted to Continental to prove that the loss was excluded. Labeling the policy as "all risk" does not relieve the insured of its initial burden of demonstrating a covered loss under the terms of the policy (*see Whitaker v Nationwide Mut. Fire Ins. Co.*, 115 F Supp 2d 612, 617 [ED Va 1999] [the fact that a loss was fortuitous under an "all risk" policy does not automatically imply that such defects were covered by the policy; the "direct physical loss" language in the policy provides a further limitation on the types of fortuitous loss covered]).

Turning to the issue of whether Roundabout met its burden of showing a covered loss, we are guided by the well-established rules governing the interpretation of insurance contracts. "Where the provisions of [a] policy 'are clear and unambiguous, they must be given their plain and ordinary meaning, and courts should refrain from rewriting the agreement' " (*United States Fid. & Guar. Co. v Annunziata*, 67 NY2d 229, 232 [citations omitted]). "Courts 'may not make or vary the contract of insurance to accomplish [their] notions of abstract justice or moral obligation' " (*Teichman v Community Hosp.*, 87 NY2d 514, 520, quoting *Breed v Insurance Co.*, 46 NY2d 351, 355). Nevertheless, "[t]he policy must * * * be construed in favor of the insured, and ambiguities, if any, are to be resolved in the insured's favor and against the insurer" (*United States Fid. & Guar. Co. v Annunziata*, 67 NY2d 229, 232 [citations omitted]).

Contrary to the ruling of the IAS court, the language in the instant policy clearly and unambiguously provides coverage only where the insured's property suffers direct physical damage. The Insuring Agreement provides coverage for "loss of, damage to, or destruction of property or facilities * * * contracted by the Insured for use in connection with such Pro-

duction, caused by the perils insured against." The Perils Insured clause covers "all risks of direct physical loss or damage to the [insured's] property," not otherwise excluded. Reading these provisions together, the only conclusion that can be drawn is that the business interruption coverage is limited to losses involving physical damage to the insured's property (*see Howard Stores Corp. v Foremost Ins. Co.*, 82 AD2d 398, 401, *affd for reasons stated* 56 NY2d 991 [no coverage under terms of policy for business interruption loss at two stores where no physical damage occurred]; *Harry's Cadillac-Pontiac-GMC Truck Co., Inc. v Motors Ins. Corp.*, 126 NC App 698, 486 SE2d 249 [NC Ct App 1997] [no business interruption coverage where no "direct physical loss" to premises under terms of policy; loss occurred due to inaccessibility of plaintiff's dealership due to snowstorm]; *see also* 11 Couch on Insurance 3d § 167:15, at 167-20—167-21 [business interruption policies "generally require[ ] some physical damage to the insured business in order to permit recovery"]).

The IAS court's interpretation that the phrase "loss of" must include "loss of use of," because otherwise "loss of" would be redundant to "destruction of," is flawed. Initially, as Continental points out, "loss of" could refer to the theft or misplacement of theatre property that is neither damaged nor destroyed, yet still requires the cancellation of performances.

More importantly, the court's interpretation completely ignores the fact that the above-quoted Insuring Agreement is limited by the phrase "caused by the perils insured against," which, as noted, requires "direct physical loss or damage to the [insured's] property." The plain meaning of the words "direct" and "physical" narrows the scope of coverage and mandates the conclusion that losses resulting from off-site property damage do not constitute covered perils under the policy (*see Whitaker v Nationwide Mut. Fire Ins. Co.*, 115 F Supp 2d at 616 [coverage for "direct physical loss" did not include defective workmanship during construction of premises]; *Great N. Ins. Co. v Benjamin Franklin Fed. Sav. & Loan Assn.*, 793 F Supp 259 [D Or 1990], *affd* 953 F2d 1387 [9th Cir 1992] [cost of asbestos removal was not "direct physical loss" under policy where building undamaged and loss only economic]).

Other provisions in the policy support the conclusion that coverage is limited to instances where the insured's property suffered direct physical damage. In the "Definition of Loss" section of the policy, the measure of recovery is limited to "such length of time as would be required with the exercise of due

diligence and dispatch to *rebuild, repair, or replace such part of the property herein described as has been lost, damaged or destroyed*" (emphasis added). If, as Roundabout argues, the policy covers losses resulting from off-site property damage, this provision would be meaningless since the insured obviously has no duty to repair a third party's property.

Similarly, the "Substitute Theatre" provision of the policy requires the insured to "exercise due diligence and dispatch to occupy a substitute theatre * * * following *loss of, damage to or destruction of the theatre*," and that the new theatre must be reasonably comparable in size and quality *"as the theatre which has been damaged or destroyed"* (emphasis added). This provision would also make little sense were there no requirement of physical damage to the insured's premises. An insurance policy should not be read so that some provisions are rendered meaningless (*see County of Columbia v Continental Ins. Co.*, 83 NY2d 618, 628), and such would be the result if Roundabout's position were upheld here.

The cases relied upon by Roundabout are inapposite as they involved policies which offered more expansive coverage than the policy in this case. For instance, in *Sloan v Phoenix of Hartford Ins. Co.* (46 Mich App 46, 207 NW2d 434 [1973]), the plaintiffs-insureds suffered business losses when the Governor of Michigan imposed a curfew during the 1967 riots. None of the theatres suffered any property damage. The business interruption provision of the subject policy included a "civil authorities extension" which stated "[t]his policy is extended to include the actual loss * * * not exceeding 2 consecutive weeks, when * * * access to the premises described is prohibited by order of civil authority." (46 Mich App at 49, 207 NW2d at 435-436.) Since other provisions of the policy required "damage to or destruction of real or personal property" (*id.*), but the civil authorities extension did not, the court ruled that the business interruption losses were covered under the policy. Here, of course, the policy did not contain a civil authorities extension—in fact it included a governmental authority exclusion.

Similarly, in *Fountain Powerboat Indus., Inc. v Reliance Ins. Co.* (119 F Supp 2d 552, 556 [ED NC 2000]), the policy contained both a civil authorities extension and an "ingress/egress clause" providing coverage for "loss[es] sustained during the period of time when * * * ingress to or egress from real and personal property * * * is thereby prevented." The District Court held that because neither provision incorporated a physical loss requirement, losses sustained due to lack of access to

the property were covered under the policy. In contrast, the Perils Insured provision of the instant policy provides exactly such a limitation.

*Datatab, Inc. v St. Paul Fire & Mar. Ins. Co.* (347 F Supp 36 [SD NY 1972]), cited by Roundabout and relied upon by the IAS court, is also distinguishable. In *Datatab*, the insured leased the fifth and sixth floors of a building where a water main break damaged the building's water pumps. While there was no physical damage or restricted access to the leased floors, the incident rendered Datatab's air conditioning and computer systems inoperable. The policy extended business interruption coverage to losses "when as a direct result of a peril insured against[,] the premises in which the property is located is so damaged as to prevent access to such property." (*Id.* at 37.) The District Court found that the policy terms "premises" and "access" were ambiguous, and ruled that the policy could reasonably be construed to cover losses arising from damage to portions of the building other than the leased floors, and which impeded the actual use of, not merely physical access to, covered property.

In this case, there is no similar ambiguity in the coverage provisions. There is no dispute that the premises covered in this policy is the Kit Kat Klub. Nor is there any provision in the policy extending coverage where access to the property is denied. Accordingly, Roundabout's reliance on *Datatab* is entirely misplaced.

Lastly, the position taken by Roundabout in its prior lawsuit against DeWitt cannot be ignored. As noted, Roundabout initially sued DeWitt arguing that it was negligent in failing to obtain from Continental business interruption coverage for the Kit Kat Klub covering off-site property damage, as it had obtained from Chubb Group for a different location. Now, Roundabout makes exactly the opposite argument—that the Continental policy covers off-site property damage. Since the express provisions of the policy support Roundabout's initial position in the *DeWitt* lawsuit, Continental is entitled to a declaration that the loss is not covered by its policy.

In light of the foregoing, it is unnecessary for us to rule on the applicability of the governmental authority exclusion.

Accordingly, the order of the Supreme Court, New York County (Helen Freedman, J.), entered January 16, 2002, which denied defendant-appellant Continental Casualty Company's motion for summary judgment seeking dismissal of the complaint and a declaration that Continental is not required to

insure plaintiff-respondent Roundabout Theatre Company for its business interruption losses, and granted plaintiffs-respondents' cross motion for summary judgment on the issue of coverage only, should be reversed, on the law, with costs, defendant-appellant's motion for summary judgment dismissing the complaint and for a declaration that Roundabout's loss is not covered by the Continental policy granted. The Clerk is directed to enter judgment accordingly.

WILLIAMS, P.J., NARDELLI, MAZZARELLI and MARLOW, JJ., concur.

Order, Supreme Court, New York County, entered January 16, 2002, reversed, on the law, with costs, defendant-appellant's motion for summary judgment dismissing the complaint and for a declaration that plaintiff Roundabout's loss is not covered by the defendant Continental's policy granted.