[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11924

Non-Argument Calendar

_____

ASCENT HOSPITALITY MANAGEMENT CO., LLC,

Plaintiff-Appellant,

*versus*

EMPLOYERS INSURANCE COMPANY OF WAUSAU,
LIBERTY MUTUAL INSURANCE COMPANY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:20-cv-00770-GMB

_____

Before JORDAN, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

Ascent Hospitality Management Company operates hotels and restaurants in five states. All five of those states issued restrictions on business and travel at the outbreak of the COVID-19 pandemic. Under these restrictions, Ascent—like the rest of the hospitality industry—suffered significant financial losses. So it filed an insurance claim, asserting that it was insured against such losses. Ascent's insurers did not agree, and denied the claim.

Ascent sued its insurers after they failed to pay. The district court dismissed the suit, reasoning that Ascent's insurance policy did not cover losses sustained due to government closure orders. Because Ascent cannot show the "direct physical loss or damage" required by its policy, we agree.

## I.

Ascent Hospitality Management Company manages and operates hotels and restaurants in 35 locations. To protect its business, Ascent purchased a yearlong "all-risks" insurance policy in September 2019. The policy was marketed by Liberty Mutual Insurance Company, but lists Employers Insurance Company of Wausau as the "company providing insurance." Ascent believed that the policy was issued by both companies. The all-risks policy was expansive in scope; it insured Ascent's property "against all

risks of direct physical loss or damage," subject to the policy's exclusions and limitations.

The outer limits of Ascent's policy (and many others like it) would soon be tested by an unexpected calamity: the COVID-19 pandemic of early 2020.  State and local governments took drastic action, issuing stay-at-home, shelter-in-place, and business closure orders to help contain the spread of disease.  These orders prohibited non-essential travel and imposed "significant restraints" on the operations of Ascent's businesses.  As a result, Ascent estimates that it lost over $40 million dollars—with its losses "increasing every day."

Ascent submitted a claim to its insurers under the all-risks policy for its business interruption losses in March 2020.  Within two days, Ascent received a reservation of rights letter containing what Ascent took to be an "anticipated denial" of its claim.  A formal letter of denial followed in early April.

Ascent promptly sued both Employers Insurance and Liberty Mutual, alleging that the insurers had wrongly denied its claim.  It sought a declaratory judgment holding that its losses were covered under the all-risks policy, along with damages resulting from breach of contract, bad faith, fraudulent misrepresentation, and fraudulent suppression.  The district court granted the insurers' motions to dismiss in part and ultimately dismissed all of Ascent's remaining claims in a judgment on the pleadings.  Ascent now appeals the dismissal of all five of its claims.

## II.

We review a district court's grant of a motion to dismiss under Rule 12(b)(6) de novo, taking the factual allegations in the complaint as true and construing them favorably toward the plaintiff. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A facially plausible claim allows us to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

We apply the same standard to a Rule 12(c) motion for judgment on the pleadings. *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018).

## III.

## A.

The central question in this dispute is whether Ascent's losses were covered under the all-risks policy. The parties agree that New York law controls interpretation of the insurance contract. New York law has long recognized that "clear and unambiguous" insurance policy provisions "must be given their plain and ordinary meaning." *U.S. Fid. & Guar. Co. v. Annunziata*, 67 N.Y.2d 229, 232 (1986) (quotation omitted). And New York courts have held that when, as here, an insurance policy explicitly covers "direct physical loss or damage," that coverage is "limited

to instances where the insured's property suffered direct physical damage." *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 751 N.Y.S.2d 4, 8 (N.Y. App. Div. 2002).

Ascent traces its alleged losses directly to government closure orders, not to any physical damage to its property. New York courts have consistently interpreted *Roundabout Theatre* to require the rejection of claims for pandemic-related lost profits under insurance provisions like the one at issue here. This is because "policy language providing coverage for 'direct physical loss or damage' unambiguously requires some form of actual, physical damage to the insured" property in order to "trigger loss of business income and extra expense coverage." *Tappo of Buffalo, LLC v. Erie Ins. Co.*, No. 20-CV-754V(Sr), 2020 WL 7867553, at \*3 (W.D.N.Y. Dec. 29, 2020); *see, e.g., Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp.*, 142 N.Y.S.3d 903, 910–11 (N.Y. Sup. Ct. 2021); *Sportime Clubs LLC v. Am. Home Assurance Co.*, No. 614493/2020, 2021 WL 4027887, at \*4–\*5 (N.Y. Sup. Ct. June 30, 2021). This case is no different. Ascent's alleged losses are not covered under the all-risks provision as a matter of New York law.[1]

Ascent advances several counterarguments; none are persuasive. First, it argues that the plain language of the all-risks

---

[1] Ascent points to a handful of cases from outside jurisdictions in which similarly situated plaintiffs have prevailed. *See, e.g., Kingray Inc. v. Farmers Grp. Inc.*, 523 F. Supp. 3d. 1163 (C.D. Cal. 2021); *Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794 (W.D. Mo. 2020). These cases make no binding pronouncements of New York law, and we do not find their reasoning persuasive.

provision could reasonably be read to include the "deprivation" of its property as a result of government responses to the COVID-19 pandemic—and that this ambiguity requires us to construe the provision in its favor.  But the plain language of the provision limits coverage to *physical* loss or damage inflicted directly on the property.  Ascent's argument to the contrary is wholly conclusory.  Furthermore, the language of the contract is precisely the same as that in *Roundabout Theatre*, where the court found that the provision "clearly and unambiguously" required "direct physical damage" to trigger coverage.  *Roundabout Theatre*, 751 N.Y.S.2d at 8.  And as explained, New York courts have consistently adhered to this interpretation of similar provisions ever since.  There is no ambiguity in the all-risks provision.

Ascent further contends that the phrase "physical loss or damage" must include more than actual physical damage, because a narrower reading would "make the term 'loss' meaningless."  But this argument was explicitly rejected by the *Roundabout Theatre* court, which explained that "direct" and "physical" worked to "narrow the scope of coverage" and limited the permissible meaning of "loss" in the insurance policy.  *Id.*  Here, as the district court explained below, physical damage and physical loss differ only in "the degree of harm they describe": damage is less severe than loss, which is "total ruin."  The plain meaning of "direct physical loss or damage" thus still requires that the alleged "loss"

be both direct and physical in nature.  Diminished profits due to government restrictions are neither.

As a last resort, Ascent asserts that *Roundabout Theatre* cannot control the outcome of this case because it did not involve a virus.  The fact that "a substance was physically present in—and attached to—the subject property" makes all the difference, Ascent says; the actual virus particles provide the necessary direct and physical element required to trigger coverage under the all-risks provision, and to hold otherwise would be to "dismissively ignore the hazardous and easily transmissible nature of COVID-19."

The danger of COVID-19, however real, does not expand the scope of the all-risks policy.  The district court correctly explained that "direct physical loss or damage requires an actual physical change to property that COVID-19 particles cannot cause" because a contaminated location can be immediately restored to its previous state by cleaning and disinfecting—no repair or replacement required.  Furthermore, as Ascent itself admits, there is no proof in this case of "actual contamination, rather than just suspected contamination," on its premises.  We do not ignore the dangerous nature of COVID-19 in recognizing that it does not inflict direct physical damage to Ascent's property.

## B.

Having determined that Ascent's alleged losses are not covered under the all-risks policy, we now turn to the specific

claims dismissed by the district court.[2]  To begin, we affirm the district court's dismissal of Ascent's declaratory judgment, breach of contract, and bad faith claims, which Ascent acknowledges are "predicated on the Policy covering Ascent Hospitality's losses." Because it does not cover those losses, the claims necessarily fail.

We also affirm the district court's dismissal of Ascent's remaining tort claims.  Neither party disputes the district court's determination that Georgia law applies to these claims.  Ascent's fraudulent representation claim fails because the first element Ascent must show under Georgia law is that the defendant made a false representation.  *See Clemons v. Delta Airlines, Inc.*, 338 Ga. App. 844, 847 (Ga. Ct. App. 2016).  And as the district court explained, because coverage was properly denied in this case, Ascent has not shown a false representation on the part of its insurers.

Ascent's fraudulent suppression claim is similarly flawed. Under Georgia law, a claim of fraudulent suppression can only be brought against a party with an "obligation to communicate." O.C.G.A. § 23-2-53.    This obligation can arise from "the confidential relations of the parties or from the particular circumstances of the case."  *Id.*  But in Georgia, "[n]o fiduciary or confidential relationship exists between an insured and the

---

[2] We need not reach the questions of whether the contamination exclusion applies and whether Liberty Mutual was a party to the insurance contract; Ascent's lack of coverage under the all-risks policy is dispositive.

21-11924                Opinion of the Court                9

insurer." *State Farm Fire & Cas. Co. v. Fordham*, 148 Ga. App. 48, 51 (Ga. Ct. App. 1978).

Ascent argues that an obligation to communicate nonetheless arose, because Ascent relied upon the insurers' false representations and because the insurers secretly intended to issue blanket denials to all claims like Ascent's without examining them (a fact "uniquely within the knowledge and control" of the insurers). Georgia law does not recognize this asserted basis for an obligation to communicate, and Ascent offers no case law on point. We therefore affirm the district court's dismissal of Ascent's fraudulent suppression claim.

★    ★    ★

Ascent's suit hinges upon its assertion that its losses were covered under the all-risks policy. But the policy requires "direct physical loss or damage" to Ascent's property, and Ascent cannot show that its lost profits meet that description. We thus agree with the district court that Ascent's losses are not covered by the policy—and that none of Ascent's claims survive a judgment on the pleadings.

**AFFIRMED.**