Consolidated Rest. Operations, Inc. v Westport Ins. Corp. (2022 NY Slip Op 02336)

Consolidated Rest. Operations, Inc. v Westport Ins. Corp.

2022 NY Slip Op 02336

Decided on April 07, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 07, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Judith Gische
Jeffrey K. Oing Tanya R. Kennedy Manuel Mendez Martin Shulman

Index No. 450839/21 Appeal No. 15410-15410A Case No. 2021-02971, 2021-04034 

[*1]Consolidated Restaurant Operations, Inc., Plaintiff-Appellant,
v
Westport Insurance Corporation, Defendant-Respondent. The Restaurant Law Center, New York State Restaurant Association, New York City Hospital Alliance, The Chef's Warehouse Inc., United PolicyHolders, New York State Trial Lawyers Association and American Property Casualty Insurance Association, Amici Curiae.

Plaintiff appeals from the order of Supreme Court, New York County (Jennifer G. Schecter, J.), entered on or about August 4, 2021, which granted defendant's motion to dismiss the complaint pursuant to CPLR 3211(a)(1) and (7) and declared that the losses plaintiff alleges in the complaint are not covered by the subject insurance policy. Plaintiff also appeals from the order, same court and Justice, entered September 23, 2021, which denied plaintiff's motion for reargument or leave to amend the complaint.

Cohen Ziffer Frenchman & McKenna LLP, New York (Robin L. Cohen, Alexander M. Sugzda and Orrie A. Levy of counsel), for appellant.
DLA Piper LLP (US), New York (Aidan M. McCormack and Robert C. Santoro of counsel), for respondent.
Jenner & Block LLP, New York (Jeremy M. Creelan, Michael W. Ross, David M. Kroeger, Gabriel K. Gillett and David J. Clark of counsel), for The Restaurant Law Center, New York State Restaurant Association and New York City Hospitality Alliance, amici curiae.
Reed Smith LLP, New York (John N. Ellison and Richard P. Lewis of counsel), for The Chefs' Warehouse Inc., amicus curiae.
Covington & Burling LLP, New York (Andrew Hahn, Andrew Henley, and Rukesh Korde, of the bar of the District of Columbia, admitted pro hac vice, of counsel), for United Policyholders, amicus curiae.
Pillsbury Winthrop Shaw Pittman LLP, New York (E. Leo Milonas, Joseph D. Jean, Maria T. Galeno and Scott D. Greenspan of counsel), and Brian J. Isaac, New York, for New York State Trial Lawyers Association, amicus curiae.
Robinson & Cole LLP, New York (Wystan M. Ackerman of counsel), for American Property Casualty Insurance Association, amicus curiae.

Gische J., 

This appeal concerns the issue of whether the actual or possible presence of COVID-19 in plaintiff's restaurants caused "direct physical loss or damage" to its property, within the meaning of the insurance policy that plaintiff purchased from defendant. The issue of whether business interruptions due to COVID-19 is caused by direct "physical" damage to property presents an issue of first impression for an appellate court in New York. This Court has, however, previously construed the phrase "direct physical loss or damage" in other contexts involving similar insurance contracts. As more fully explained below, we hold that where a policy specifically states that coverage is triggered only where there is "direct physical loss or damage" to the insured property, the policy holder's inability to fully use its premises as intended because of COVID-19, without any actual, discernable, quantifiable change constituting "physical" difference to the property from what it was before exposure to the virus, fails to state a cause of action for a covered loss.
On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic and countries began sealing their borders. Beginning in early February into March 2020, plaintiff, the owner and operator of numerous restaurants both in the [*2]United States and abroad, took initial steps to protect its customers by implementing enhanced cleaning procedures, and by installing hand sanitizer stations and physical partitions. By mid-March, however, plaintiff was forced to suspend its indoor dining operations as a result of various executive closure orders in New York and elsewhere. In some states plaintiff was allowed to continue providing its customers with takeout, drive through and/or delivery services. It is unrefuted that plaintiff suffered tens of millions of dollars in revenue loss because of sharply curtailed operations.
Before the pandemic, plaintiff purchased a commercial "all-risk" form of general property insurance from defendant, which included business interruption coverage. This policy had a $50 million per occurrence limit and was in effect from July 1, 2019 - July 1, 2020. The insurance agreement provides that "this POLICY . . . insures all risks of direct physical loss or damage to INSURED PROPERTY while on INSURED LOCATION(S) provided such physical loss or damages occurs during the term of this POLICY." Beyond covering physical loss or damage itself, the policy also provided coverage for associated time element losses, also known as business interruption loss, during the period of direct physical loss or damage to the property:
"A. Loss Insured
This POLICY insures TIME ELEMENT loss, during the Period of Liability directly resulting from direct physical loss or damage insured by this POLICY to INSURED POLICY at INSURED LOCATIONS(S) . . . "
In April 2020, plaintiff filed a claim with defendant stating it had suffered direct physical loss or damage to its property because the actual or threatened presence of the virus in and on its property (i.e. the ambient air and internal surfaces) eliminated the functionality of the restaurants for their intended purpose. In July 2020, defendant denied coverage stating that "[t]he actual or suspected presence of [SARS CoV-2] responsible for [COVID-19] does not constitute physical loss or damage to the property," within the meaning of the policy, and that even if there was any coverage under a communicable disease clause, it was limited to a $250,000 combined sublimit, far less than plaintiff's claimed losses. Defendant also invoked a contaminant exclusion to coverage that contained the term "virus."
In August 2020, plaintiff commenced this action for breach of contract, and a judgment in its favor against defendant declaring that its losses are covered under the policy and that it is entitled to payment for its claim. Defendant brought a preanswer motion to dismiss the complaint based upon documentary evidence (CPLR 3211[a][1]) and failure to state a cause of action (CPLR 3211[a][7]), stating that the clear weight of authority in New York is that "physical loss or damage" requires some form of actual, physical damage to the insured property in order for there to be a loss that would trigger coverage. Supreme Court granted the [*3]motion. It dismissed the complaint on the basis that plaintiff had not sustained any "physical" loss or damage within the meaning of its policy and prevailing New York law. The court also stated that the result was constrained by this Court's prior decision in Roundabout Theatre Co. v Continental Cas' Co. (302 AD2d 1 [1st Dept 2002]). Plaintiff later moved to reargue or, in the alternative, to amend its complaint. That second motion was denied in its entirety. This appeal of both orders ensued.
Plaintiff argues that Supreme Court erred in dismissing the complaint because it applied the wrong legal standard by considering what it thought could be proved rather than whether the complaint stated a cause of action (CPLR 3211[a][7]). Plaintiff contends that it set forth facts that adequately supported the causes of action pleaded, and therefore, the case should be allowed to proceed beyond the pleading stage. With respect to dismissal of the complaint based upon documentary evidence (CPLR 3211[a][1]), plaintiff separately argues that this Court's precedent in Roundabout Theatre does not dictate the resolution of the issues in this case because of its markedly different facts. Citing decisions by other non-New York courts, plaintiff claims that COVID-19 inflicts physical damage on property, even if such damage is invisible or intangible. Plaintiff draws analogies between the coronavirus and the presence of noxious substances, such as e. coli, asbestos, ammonia and salmonella, arguing that other courts have held such airborne substances, etc., inflict "physical" damage to property because they are difficult to remediate, just like COVID-19. Plaintiff contends that unlike other cases where the insured claimed physical loss or damage because of government closures, its claim is that the virus was physically present in and physically altered its premises, evidenced by the fact that the restaurants were unusable. Plaintiff contends that the physical droplets and respiratory particles that transmit the virus are so resilient that they cannot be entirely eradicated from property. Plaintiff argues that the absence of a standard-form virus exclusion is further evidence that coverage in the COVID-19 context is available under its policy and that other exclusions to coverage in its policy do not apply.
Defendant argues that plaintiff's property has not undergone any physical change, let alone damage, due to the virus. Assuming the virus was present, defendant contends that plaintiff has not identified any aspect of its property, any item, or even a single knob or table that was physically altered by the presence of COVID-19. Defendant argues that our decision in Roundabout is directly on point and decisive of the issue before us. Defendant also argues that COVID-19 is a virus that infects cells in people but cannot possibly alter or change "things." According to defendant, plaintiff may have suffered a loss of use of its property, but a loss of use is different [*4]than physical damage to it and without physical damage, no coverage is available.
Where, as here, "[a]n insured seek[s] to recover for a loss under an insurance policy [it] has the burden of proving that a loss occurred and also that the loss was a covered event within the terms of the policy" (United States Dredging Corp. v Lexington Ins. Co., 99 AD3d 695, 696 [2d Dept 2012], citing Roundabout Theatre Co. v Continental Cas. Co., 302 AD2d at 6). "In determining a dispute over insurance coverage, we first look to the language of the policy" (Keyspan Gas E. Corp. v Munich Reins. Am., Inc., 31 NY3d 51, 60 [2018][internal quotation marks and citations omitted]). Moreover, like any other contract, the "provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court" (Universal Am. Corp v National Union Fire Ins. Co. of Pittsburgh, Pa., 25 NY3d 675, 680 [2015][internal quotation marks and citations omitted]). Since this is a pre-answer motion to dismiss under CPLR 3211(a)(1) and (7), our review is de novo, but different standards apply. With respect to defendant's motion to dismiss for failure to state a cause of action, we are required to accept as true the facts in the complaint and consider whether plaintiff can succeed upon any reasonable view of the facts stated (see Siegmund Strauss, Inc. v East 149th Realty Corp., 104 AD3d 401, 403 [1st Dept 2013]). With respect to defendant's motion to dismiss based upon documentary evidence, "such motion may be appropriately granted only where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326 [2002]). As an initial matter, the insurance policy qualifies as "documentary evidence" under CPLR 3211(a)(1) (Ralex Servs., Inc. v Southwest Mar. & Gen. Ins. Co., 155 AD3d 800, 802 [2d Dept 2017]). Therefore, we first consider what losses are covered under the terms of this policy.
Plaintiff claims that the term "physical loss or damage to property," as used in its commercial property insurance policy, covering "all-risk," is ambiguous because the word "physical" is undefined. Plaintiff argues that its claim that the virus particles physically impacted its property is entirely plausible. "An ambiguity [however] does not arise from an undefined term in a policy merely because the parties dispute the meaning of that term" (Hansard v Federal Ins. Co., 147 AD3d 734, 737 [2d Dept 2017], lv denied 29 NY3d 906 [2017]). Moreover, it is blackletter law that insurance contracts should be interpreted "consistent with the reasonable expectation of the average insured" (Matter of Viking Pump, Inc. 27 NY3d 244, 257 [2016]). Terms that are clear cannot be disregarded and "must be given their plain and ordinary meaning" (Slattery Skanska Inc. v American Home Assur. Co., 67 AD3d 1, 14 [1st Dept 2009][internal [*5]quotation marks and citations omitted]). We reject plaintiff's argument that the policy is ambiguous.
The pandemic engendered a great deal of litigation in New York and throughout the country concerning what a direct "physical" damage or loss entails, for purposes of commercial property insurance policies, similar to the one at bar. This Court has interpreted "direct physical damage or loss to property" to mean something that directly happens to the property resulting in physical damage to it. In Roundabout Theatre Co., for instance, we clarified that although the plaintiff sustained some minor damage to the roof of its property, its claim was for loss of business income resulting from damage that had occurred elsewhere. We held that the Roundabout Theatre's claim was for "loss of use," which was not covered under its policy covering "all risks of direct physical loss or damage to the property described in Paragraph I [i.e., the theatre building or facilities]," not an incidental loss of use (302 AD2d at 7).
Roundabout, while factually distinguishable, provides a useful starting point for our analysis, supporting a conclusion that any claim for coverage must arise from something that occurred within the property. Additional authority supports a further conclusion that in order for there to be "direct" "physical" damage or loss to property, there be "some physical problem with the covered property," not just the mere loss of use (Rye Ridge Corp. v Cincinnati Ins. Co., 535 F Supp 3d 250, 255 [SD NY 2021], affd 21-1323-CV, 2022 WL 120782 [2d Cir Jan. 13, 2022]). The property must be changed, damaged or affected in some tangible way, making it different from what it was before the claimed event occurred. If the proffered facts do not identify any physical (tangible) difference in the property, then the complaint fails to state a cause of action. Were we to accept that an economic loss, for purposes of the all-risk policy plaintiff purchased from defendant, without any attendant physical, tangible damage to the property is sufficient, it would render the term "physical" in the policy meaningless (see County of Columbia v Continental Ins. Co., 83 NY2d 618, 628 [1994]). Phrased differently, under the terms of plaintiff's policy, the impaired function or use of its property for its intended purpose, is not enough. "Rather to survive dismissal [the] complaint must plausibly allege that the virus itself inflicted actual physical loss of or damage to [the] property" (Kim-Chee LLC v Philadelphia Indem. Ins. Co., 21-1082-CV, 2022 WL 258569, at *1 [2d Cir Jan. 28, 2022]).
Although plaintiff argues that its complaint and certainly its proposed amended complaint allege that its property was physically altered by the coronavirus, we find that the pleadings are conclusory. While plaintiff cites several out-of-state decisions that it believes supports its position, the overwhelming number of authorities, with which we agree, support an opposite view.
Federal courts [*6]applying substantive New York law have uniformly held that conclusory assertions that COVID-19 causes physical damage to property because it is contagious and hard to clean fail to state a basis for coverage where the policy requires direct physical loss or damage to the property. In Kim-Chee, for instance, the Second Circuit Court of Appeals rejected the plaintiff's arguments that property was physically damaged due to COVID-19 exposure. In affirming dismissal of the complaint at an initial stage, the Court held that the complaint "[did] not allege that any part of its building or anything within it was damaged - let alone to the point of repair, replacement, or total loss" (Kim-Chee LLC, 2022 WL 258569, at *2).
Likewise, in 10012 Holdings, Inc. v Sentinel Ins. Co 21 F4th 216, 222 [2d Cir 2021]), another case applying New York law, the Second Circuit also rejected the plaintiff's claim that it had suffered a "physical event" within the meaning of its policy; the court affirmed dismissal of the complaint because the facts did not show "direct physical loss" or "physical damage" to the plaintiff's property and the policy "d[id] not extend to mere loss of use of a premises," but rather required "actual physical loss of or damage to the insured's property."[FN1] While these decisions are not binding on this court, their analysis of New York law is persuasive and we adopt their reasoning (see In re Brooklyn Navy Yard Asbestos Litig., 971 F2d 831, 850 [2d Cir 1992]).
Other federal courts throughout the country, not applying New York law, but rather standard principles of insurance contract interpretation, have reached the same conclusion, that the terms "direct" and "physical" as it relates to "damage or loss to property" requires a direct physical loss of property, not simply the inability to use it (Santo's Italian Cafe LLC v Acuity Ins. Co., 15 F4th 398, 402 [6th Cir 2021]["A loss of use simply is not the same as a physical loss"]; Oral Surgeons, P.C. v Cincinnati Ins. Co., 2 F4th 1141, 1144 [8th Cir 2021]["there must be some physicality to the loss or damage of property—e.g., a physical alteration, physical contamination, or physical destruction"]; Gilreath Family & Cosmetic Dentistry, Inc. v Cincinnati Ins. Co., 2021 WL 3870697, at *2 [11th Cir Aug. 31, 2021]["Gilreath has alleged nothing that could qualify, to a layman or anyone else, as physical loss or damage;" no damage or change to the property]). The Fifth Circuit has specifically adopted the reasoning set forth in the decisions of the Second Circuit, finding that "direct physical loss" to property, as required to recover lost business income and extra expense under an all-risk commercial property policy, necessarily entails a "tangible alteration or deprivation of property" (Terry Black's Barbecue, L.L.C. v State Auto. Mut. Ins. Co., 22 F4th 450, 456 [5th Cir 2022]).
Several trial level New York courts have also granted preanswer dismissals of complaints with alleged facts similar to those in [*7]the complaint at bar. Plaintiff argues that those decisions are distinguishable because the policyholders in those cases claimed financial loss attributable to the executive orders shutting down their businesses, but its claim is that COVID-19 actually damaged its property by altering the surfaces of its restaurants and the air within them, resulting in direct physical loss. This is a distinction without any meaningful difference. These trial level courts have concluded that the plain meaning of "physical" as commonly understood, requires some tangible alteration of the property that changes it from what it previously was to what it is now (Abruzzo DOCG Inc. et al. v Acceptance Indemnity Ins. Co. et al., index No. 514089/2020 [Sup Ct, Kings County]["mere loss of use is insufficient to trigger any coverage for physical loss or physical damage]; Federal Ins. Co. v BD Hotels LLC, index No. 650856/2021 [Sup Ct, NY County]["while BDH cites to dictionary definitions and case law from other jurisdictions, it cites to no New York decisions supporting its interpretation of the coverage provision at issue here"]; Benny's Famous Pizza Plus Inc. v Security Natl. Ins. Co., 72 Misc 3d 1209(A), *4 [Sup Ct, Kings County July 1, 2021]["proof . . . of alteration of the insured premises is necessary"]; 6593 Weighlock Dr., LLC v Springhill SMC Corp., 71 Misc 3d 1086, 1095-1096 [Sup Ct, Onondaga County 2021][no tangible physical loss or damage to plaintiff's hotels]; Visconti Bus Serv., LLC v Utica Natl. Ins. Group, 71 Misc 3d 516, 531-532 [Sup Ct, Orange County 2021]["the words "direct" and "physical," which modify the phrase "loss or damage," require a showing of actual, demonstrable physical harm of some form to the insured premises—the forced closure of the premises for reasons exogenous to the premises themselves is insufficient to trigger coverage"]). Neither the government orders, nor the presence of the coronavirus inflicted "direct physical loss or damage" to any of these properties for purposes of property insurance coverage (see Newman Myers Kreines Gross Harris, P.C. v Great N. Ins. Co., 17 F Supp 3d 323, 331 [SD NY 2014]; see also Food for Thought Caterers Corp. v Sentinel Ins. Co., 524 F Supp 3d 242, 246-247 [SD NY 2021]). As stated in Newman Myers, "physical loss or damage" in an insurance policy requires "actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure" (17 F Supp 3d at 331).
Although the words "direct" and "physical," modify or qualify the phrase "loss or damage," to require a showing of actual, demonstrable physical harm of some form to the insured premises, plaintiff nonetheless urges us to embrace a more expansive definition of "physical" because some courts have held that conditions rendering property "unusable" afford coverage for business interruption losses (Port Authority [*8]of New York & New Jersey v Affiliated FM Ins. Co., 311 F3d 226, 230 [3d Cir 2002][presence of asbestos in several buildings constituted a "physical loss or damage"]; Gregory Packaging, Inc. v Travelers Prop. Cas. Co. of Am., 2:12-CV-04418 WHW, 2014 WL 6675934 [D NJ, Nov. 25, 2014][ammonia infiltration requiring extensive remediation measures]; TRAVCO Ins. Co. v Ward, 715 F Supp 2d 699 [ED Va 2010][toxic gas from dry walls]). None of these cases involve COVID-19, the courts did not apply New York law and these cases are not binding on this court. These cases and others like them are distinguishable because under New York law "a negative alteration in the tangible condition of the property [insured]" is necessary in order for there to be "physical" damage to the property (Michael Cetta, Inc. v Admiral Indem. Co., 506 F Supp 3d 168, 178-179 [SD NY 2020], 2021 WL 1408305 [2d Cir 2021]). Pepsico, Inc. v Winterthur Intl. Amer. Ins. Co., 24 AD3d 743 (2d Dept 2005), also relied on by plaintiff, is unhelpful because the product (soda) was, in fact, physically altered so as to render it unsellable to consumers.
Plaintiff claims that given the opportunity, it can better develop its claim and it urges us to grant its motion to amend its complaint. A complaint "cannot be vague and conclusory" (Phillips v Trommel Constr., 101 AD3d 1097, 1098 [2d Dept 2012]), and "[b]are legal conclusions and factual claims which are flatly contradicted by the record are not presumed to be true" (Parola, Gross & Marino, P.C. v Susskind, 43 AD3d 1020, 1021-1022 [2d Dept 2007]). As we have seen, plaintiff fails to identify any physical change, transformation, or difference in any of its property. While it vaguely refers to "fomites" in the surfaces of its restaurants, and states the virus infiltrated the premises, it fails to identify in either its pleading or the proposed amended complaint a single item that it had to replace, anything that changed, or that was actually damaged at any of its properties. Nothing stopped working. In fact throughout the pandemic, plaintiff was able to provide its customers with takeout, drive through and delivery services, indicating that the kitchens still operated, and the property was usable, and not physically damaged, despite the presence of the virus. Its statement that COVID-19 particles and droplets damage property is merely a conclusion that will not save the complaint from dismissal. Plaintiff's insurance policy does not provide coverage for financial loss, without direct physical damage or loss, and its inability to operate the property as intended is not discernable, direct physical damage or loss to its property, but rather an external force limiting plaintiff's use of the property (see Newman Myers Kreines Gross Harris, P.C. v Great Northern Ins. Co., 17 F Supp 3d 323, 331[SD NY 2014][no coverage for loss of business while power shut-off during Hurricane Sandy; no physical damage sustained]; see also Roundabout Theatre Co. v Continental [*9]Casualty Co., 302 AD2d 1]).
Since the complaint seeks coverage for economic loss due to "direct physical loss or damage to insured property," but plaintiff fails to allege any tangible, ascertainable damage, change or alteration to the property so as to plausibly state a claim the damage was "physical," the complaint was properly dismissed by Supreme Court because it fails to state a cause of action. The additional facts that plaintiff seeks to add by way of its proposed amended complaint do not remedy this defect. As the proposed amended complaint is patently devoid of merit, leave to amend the complaint was properly denied (see MBIA Ins. Corp. v Greystone & Co., Inc., 74 AD3d 499 [1st Dept 2010]).
Plaintiff's argument that a property insurance policy without a virus exclusion provides coverage for loss or damage caused by viruses is contrary to well-settled law that "exclusion clauses subtract from coverage rather than grant it" (Raymond Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa., 5 NY3d 157, 163 [2005][internal quotation marks and citation omitted]). Furthermore, having determined there is no coverage, we need not address whether any of the exclusions to coverage apply to bar coverage for plaintiff's claims.
No appeal lies from the denial of a motion for reargument (Street Snacks, LLC v Bridge Assoc. of Soho, Inc., 156 AD3d 556, 557 [1st Dept 2017]).
Accordingly, the order of Supreme Court, New York County (Jennifer G. Schecter, J.), entered on or about August 4, 2021, which granted defendant's motion to dismiss the complaint pursuant to CPLR 3211(a)(1) and (7) and declared that the losses plaintiff alleges in the complaint are not covered by the subject insurance policy, should be affirmed, without costs. The order, same court and Justice, entered September 23, 2021, which denied plaintiff's motion for reargument or leave to amend the complaint, should be affirmed, insofar as it denied leave to amend the complaint, and the appeal
otherwise dismissed, without costs, as taken from a nonappealable order.
Order, Supreme Court, New York County (Jennifer G. Schecter, J.), entered on or about August 4, 2021, affirmed, without costs. Order, same court and Justice, entered September 23, 2021, affirmed insofar as it denied leave to amend the complaint, and the appeal therefrom otherwise dismissed, without costs, as taken from a nonappealable order.
Opinion by Gische, J. All concur.
Gische, J.P., Oing, Kennedy, Mendez, Shulman, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 7, 2022

Footnotes

Footnote 1: To date, these New York district courts have reached the same result, applying essentially the same analysis: Mohawk Gaming Enters., LLC v Affiliated FM Ins. Co., 534 F Supp 3d 216, 222 [ND NY 2021]; St. George Hotel Assoc., LLC v Affiliated FM Ins. Co., 20-CV-05097 (DG)(RLM), 2021 WL 5999679, at *6 [ED NY Dec. 20, 2021][physical damage as that term is ordinarily understood is "a negative alteration in the tangible condition of property"]; Jeffrey M. Dressel, D.D.S., P.C. v Hartford Ins. Co. of the Midwest, Inc., 20 Civ. 2777 (KAM)(VMS), 2021 WL 1091711, at *3-5 [ED NY Mar. 22, 2021]; Sharde Harvey DDS, PLLC v Sentinel Ins. Co., No. 20 Civ 3350 (PGG) (RWL), 2021 WL 1034259 at *6-7 [SD NY Mar. 18, 2021].