Lebedev v Blavatnik (2024 NY Slip Op 01872)

Lebedev v Blavatnik

2024 NY Slip Op 01872

Decided on April 04, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 04, 2024

Before: Kern, J.P., Singh, González, Pitt-Burke, Rosado, JJ. 

Index No. 650369/14 Appeal No. 1985 Case No. 2023-02622 

[*1]Leonid L. Lebedev, Plaintiff-Appellant,
v
Leonard Blavatnik et al., Defendants-Respondents.

Steptoe & Johnson LLP, New York (Michael C. Miller of counsel), for appellant.
Quinn Emanuel Urquhart & Sullivan, LLP, New York (Stephen Broome of counsel), for Leonard Blavatnik, respondent.
Williams & Connolly LLP, New York (John Williams of counsel), for Viktor Vekselberg, respondent.

Order, Supreme Court, New York County (Andrea Masley, J.), entered on or about April 28, 2023, which granted defendants' motion for summary judgment dismissing plaintiff's breach of contract claim and directed the Clerk to enter judgment, unanimously affirmed, with costs.
This action arises out of a series of financial transactions between the parties in connection with the multi-billion 2013 sale of the 2003 joint venture between Tyumen Oil Company (TNK) and British Petroleum (BP). In 1997, plaintiff made a cash contribution of $25 million and transferred his shares in TNK and a company related to TNK to defendants. In 2001, the parties resolved a dispute concerning the 1997 transaction by entering into an investment agreement. This agreement provided that plaintiff would own "equity rights" to 15% of defendants' stake in the oil business held by defendants' company, Oil and Gas Industrial Partners Ltd. (OGIP), and be entitled to 15% of OGIP's net profits going forward (income rights). Defendants would also issue promissory notes to plaintiff as payment for the income owed to him. Pursuant to the agreement, defendants, through their affiliate AS Naftaco Industrial Partners Ltd. (Naftaco), conveyed a $200 million promissory note to Coral Petroleum Ltd. (Coral), an Irish agency company that represented plaintiff as his nominee, in 2002.
Defendants allege that, in 2003, they sought to "buy out" the stake that plaintiff would have in the joint venture based on the equity and income rights he secured via the 2001 investment agreement. Plaintiff, however, alleges that defendants sought to make him a silent partner in the joint venture pursuant to oral and written agreements that purportedly purchased his income rights, but preserved his equity rights and incorporated them into the joint venture. As relevant here, Coral, on behalf of plaintiff, and defendants' affiliate, Rochester Resources Ltd., entered into an acquisition agreement in 2003 that was made in furtherance of an oral agreement between the parties in which defendants would pay plaintiff $600 million and buy back the 2002 promissory note. It is undisputed that plaintiff received the $600 million payment in full.
Plaintiff commenced this action in 2014 seeking to recover $2 billion after defendants received a payment of approximately $13.8 billion from the sale of the TNK-BP joint venture. In 2018, the parties filed the underlying motions for summary judgment concerning whether the 2003 acquisition agreement bought out plaintiff's equity and income rights and released any related claims related to the joint venture. The motion court granted defendant Viktor Vekselberg's motion for summary judgment as to plaintiff's breach of contract and breach of joint venture claims, denied plaintiff's motion for summary judgment as to these claims, and dismissed plaintiff's claim for breach of fiduciary duties owed to co-venturers. The court also granted plaintiff's motion for summary judgment as to Vekselberg's [*2]indemnification counterclaim.
On appeal, we affirmed dismissal of the joint venture claim and indemnification counterclaim and reinstated plaintiff's breach of contract claim, finding that there were issues of fact as to contemporaneous consideration (see Lebedev v Blavatnik, 193 AD3d 175, 185 [1st Dept 2021]). Thereafter, defendants renewed their motion for summary judgment. On April 13, 2023, Supreme Court granted summary judgment for defendants, finding that the 2003 acquisition agreement barred plaintiff's breach of contract claim.
We affirm on appeal. Supreme Court correctly found that the "waiver and release" provision in the 2003 acquisition agreement bars this breach claim. That agreement acquired "all rights, claims, business interests, and other entitlements" "emanating from" an "Underlying Transaction," which was defined as a "[provision] of certain loans" and "[transfer] of certain shares in the Russian oil company Tyumen Oil Company" by the "Seller [Coral] and its Affiliates," and released "any and all of their rights, claims and other entitlements" "emanating from and/or related to" the "Underlying Transaction" (see Goldberg v Manufacturers Life Ins. Co., 242 AD2d 175, 181 [1st Dept 1998] [holding that a release of "any and all claims" clearly and unambiguously discharges such claims]; see also Hack v United Capital Corp., 247 AD2d 300, 301 [1st Dept 1998]).
Plaintiff argues that the definition of "Underlying Transaction" is ambiguous and "provide[s] no identifying information about the actual transactions" that it purports to name; however, the record establishes that the Underlying Transaction can only refer to the 1997 transaction in which plaintiff made a $25 million cash contribution and transferred shares he owned in TNK. As Supreme Court noted, there is no dispute between the parties as to plaintiff's 1997 contribution and transfer of shares, which was the only instance of such activity between the parties. Additionally, though plaintiff argues that the 1997 transaction did not involve "loans" and Naftaco had not yet been created, the 2002 promissory note conveyed to Coral used nearly identical language to reference the 1997 transaction as the contested language in the 2003 acquisition agreement.[FN1] It is undisputed that this note was issued in consideration of income due to plaintiff under the 2001 investment agreement that resolved the parties' dispute regarding the 1997 transaction. Plaintiff therefore fails to identify another transaction that would render the provision defining the Underlying Transaction ambiguous (see Georgia Malone & Co. v E&M Assoc., 163 AD3d 176, 185 [1st Dept 2018] ["[A] contract is ambiguous when read as a whole, [it] fails to disclose its purpose and the parties' intent . . . or when specific language is susceptible of two reasonable interpretations"] [quotation marks and citations omitted]).
Moreover, despite plaintiff's argument to the contrary, the release applies to him as an "Affiliate" [*3]of Coral as the "Seller" in the 2003 acquisition agreement by virtue of his being a beneficial owner of the Seller. The agreement defines "Affiliate" or "Affiliates" as "any of the beneficial owners of a party to this Agreement or any entity in which such beneficial owner . . . directly or indirectly own or control at least 10% of the outstanding share capital or participation rights." Although plaintiff contends that the term "beneficial owner" is ambiguous, "the lack of a definition does not, in and of itself, mean that the word must be ambiguous" (Slattery Skanska Inc. v American Home Assur. Co., 67 AD3d 1, 15 [1st Dept 2009] [interpreting undefined terms and conditions of an insurance policy according to "common usage"]; see also Consolidated Rest. Operations, Inc. v Westport Ins. Corp., 205 AD3d 76, 81 [1st Dept 2022] ["Terms that are clear cannot be disregarded and must be given their plain and ordinary meaning"] [quotation marks and citation omitted]).
We find that Supreme Court correctly held that the record establishes plaintiff as a beneficial owner of Coral: plaintiff was the sole recipient of the $600 million paid under the 2003 acquisition agreement; Coral's nominee directors and accountant deposited the company's funds with BNP Paribas and gave plaintiff a broad POA to act on its behalf; an "Establishment of the Beneficial Owner's Identity" form submitted by the same Coral directors to BNP identifies plaintiff as the "beneficial owner of the assets concerned"; plaintiff and his wife were the two authorized signatories on Coral's account with full signing authority, including the right to withdraw funds; and plaintiff used his POA to direct and sign for myriad transactions in Coral's name involving hundreds of millions of his own funds and for his own benefit.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 4, 2024

Footnotes

Footnote 1: "Maker acknowledges and agrees that this Note is being issued to Holder in respect of the obligations owed to Holder and certain of its affiliates (Holder's Affiliates). . . by (i) AS Naftaco Industrial Partners Ltd. ("Naftaco"). . . in connection with certain loans and the transfer by Holder's Affiliates of certain shares in Tyumen Oil Company to Maker's Affiliates" (emphasis added).