■ VIVIR OF LI, INC., Formerly Known as OPUS VIVIR, INC., Appellant, v JOHN EHRENKRANZ et al., Respondents, et al., Counterclaim Defendant. [7 NYS3d 411]—

In an action, inter alia, to recover damages for breach of contract, the plaintiff appeals from a judgment of the Supreme Court, Suffolk County (Pines, J.), entered September 12, 2013, which, upon a jury verdict finding, among other things, in effect, that it breached the parties' construction contract, is in favor of the defendants and against it in the principal sum of $2,211,000.

Ordered that the judgment is affirmed, with costs.

In March 2007, the defendants entered into a contract to purchase real property located on Butter Lane, in Bridgehampton, from nonparty Dimitri Boylan (hereafter Dimitri). The real property was improved with a partially constructed residence. At the same time the defendants entered into the contract of sale, they entered into a construction contract with the plaintiff, Vivir of LI, Inc., formerly known as Opus Vivir,

Inc. (hereafter Opus), whereby Opus agreed to complete the construction of the residence at a contract price of $1.4 million. Dimitri's brother, Julian Boylan (hereafter Julian), the counterclaim defendant, was the principal of Opus and negotiated directly with the defendants over the terms of the construction contract. The construction contract, which included a merger clause, provided that "[n]ecessary or desired" construction changes during the construction process, also referred to as change orders, agreed upon between the parties to the construction contract, would be at "the additional cost to Owner," i.e., the defendants. Approximately 36 change orders were approved during the construction of the residence, which ultimately came to a halt, uncompleted, in December 2008. Shortly thereafter, Opus ceased doing business and advised the defendants it could not complete the construction due to an alleged "cash flow" problem.

Opus commenced this action against the defendants seeking, inter alia, to recover allegedly outstanding monies due under the construction contract and change orders. The defendants counterclaimed, alleging, among other things, that Opus materially breached the construction contract in a number of ways, and overcharged them with respect to the change orders by adding an unstated markup cost to the total amount of each change order. The defendants alleged, and argued at trial, that the construction contract did not provide for markups, and that, during the negotiation process, Julian stated in an email that any changes following execution of the construction contract would be at "cost," without "mark up." Opus contended that change order markups were always contemplated by the parties, and that they did not need to be listed as a separate item on the change orders. Following a jury trial limited to the issue of the parties' respective breach of contract claims, at which parol evidence with respect to the change order markup issue was admitted into evidence, the jury returned a verdict in favor of the defendants awarding them damages in the principal sum of $2,211,000.

Opus's contention that the jury verdict must be set aside because parol evidence with respect to the change order markup issue was incorrectly admitted into evidence is without merit. A written agreement that is complete, clear, and unambiguous on its face must be enforced to give effect to the meaning of its terms and the reasonable expectations of the parties, and the court should determine the intent of the parties from within the four corners of the contract without looking to extrinsic evidence to create ambiguities (see *South Rd.*

*Assoc., LLC v International Bus. Machs. Corp.*, 4 NY3d 272, 277 [2005]; *W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]; *Belle Harbor Wash. Hotel, Inc. v Jefferson Omega Corp.*, 17 AD3d 612 [2005]). A contract is considered to be clear and unambiguous where the language used has "a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion" (*Breed v Insurance Co. of N. Am.*, 46 NY2d 351, 355 [1978]). Moreover, the parol evidence rule operates to preclude evidence of a prior or contemporaneous communication during negotiations of the agreement that contradicts, varies, or explains a written agreement which is clear and unambiguous in its terms and expresses the parties' entire agreement and intentions (*see Annis v Phillips*, 256 AD2d 531, 531 [1998]; *Stone v Schulz*, 231 AD2d 707, 707 [1996]; *Katz v American Tech. Indus.*, 96 AD2d 932, 933 [1983]). Where a contract contains a merger clause, a court is obliged to require full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing (*see Schron v Troutman Sanders LLP*, 20 NY3d 430 [2013]).

Here, contrary to Opus's contention, parol evidence was properly admitted into evidence to explain the ambiguous phrase "cost to Owner" in the change order provision of the construction contract, inasmuch as the term "cost" was not defined, and could have various meanings, including one limited to labor and material costs without an additional markup. Accordingly, parol evidence, such as the email from Opus's principal, Julian, stating that change orders would not include markups, which does not otherwise vary or contradict the construction contract, was permitted (*see Laskey v Rubel Corp.*, 303 NY 69 [1951]; *Levy v Keslow*, 213 AD2d 276 [1995]).

Opus's remaining contention is without merit. Mastro, J.P., Austin, Cohen and Barros, JJ., concur.