Greene v Fast Eats Clifton Park, LLC (2020 NY Slip Op 03055)





Greene v Fast Eats Clifton Park, LLC


2020 NY Slip Op 03055


Decided on May 28, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 28, 2020

529539

[*1]Donald C. Greene, Doing Business as DCG Development Co., Respondent,
v
Fast Eats Clifton Park, LLC, Formerly Known as Sonic of Clifton Park, LLC, Appellant.

Calendar Date: March 25, 2020

Before: Lynch, J.P., Mulvey, Devine, Aarons and Colangelo, JJ.


Monaco, Cooper & Carr, PLLC, Albany (Adam H. Cooper of counsel), for appellant.
Goldman Attorneys PLLC, Albany (Paul J. Goldman of counsel), for respondent.



Colangelo, J.
Appeal from an order of the Supreme Court (Buchanan, J.), entered June 28, 2019 in Saratoga County, which, among other things, granted plaintiff's motion for summary judgment.
In April 2018, defendant entered into a lease agreement with plaintiff allowing defendant to operate a Sonic drive-through restaurant in the endcap of Building 100 in a shopping center owned by defendant in the Town of Clifton Park, Saratoga County. The lease contemplated interior as well as exterior improvements to accommodate the design and model of defendant's restaurant, including installation of drive-through lanes in the parking lot and an outdoor covered parking area where customers would order food and have it delivered to their vehicles. There is no dispute that the existing stormwater detention basin on plaintiff's property was located at ground level. About two months after the lease was signed, plaintiff advised defendant that a new underground stormwater detention system was required to complete improvements to the property for defendant's business to operate, and that defendant was required to install and pay for the system under the terms of the lease. A dispute arose as to who was obligated to construct and pay for the new stormwater detention system. Plaintiff filed a notice of default by defendant under the lease in September 2018 and terminated the lease the next month.
Plaintiff then commenced this action seeking a declaratory judgment that it had properly terminated the lease, requesting damages. Defendant joined issue and asserted counterclaims contending that plaintiff was in breach of the lease, seeking specific performance of the lease. Plaintiff thereafter moved for summary judgment arguing that defendant had breached the lease by failing to produce plans for or construct the stormwater detention system, and requested a declaration that it had properly terminated the lease based upon defendant's breach and dismissal of defendant's counterclaims. Defendant opposed the motion, arguing, among other things, that construction of the underground stormwater detention system was not its responsibility under the lease, that the system is not mentioned in or covered by the lease and is excluded from the defined scope of the leased premises, and that extrinsic evidence establishes that plaintiff had agreed to pay for the system. Supreme Court granted plaintiff's motion for summary judgment and dismissed defendant's counterclaims. The court concluded that the terms of the lease required defendant, as the tenant, to design and construct the stormwater detention system, which it found was required for defendant to open and operate its restaurant in compliance with local building codes. Defendant appeals.
The key disputed issue is whether the lease unambiguously obligates either party to finance the stormwater detention system and, if not, whether the parties' extrinsic evidence is admissible and resolves the ambiguity.[FN1] "In determining the obligations of parties to a contract, the threshold determination as to whether an ambiguity exists is a question of law to be resolved by the court" (Agor v Board of Educ., Northeastern Clinton Cent. Sch. Dist., 115 AD3d 1047, 1048 [2014] [citations omitted]; see W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]; Baff v Board of Educ. of the Fonda-Fultonville Cent. Sch. Dist., 169 AD3d 1322, 1323 [2019]). If contractual language is unambiguous, it "must be enforced according to the plain meaning of its terms" (Matter of Bainbridge Nursing Home v Zucker, 170 AD3d 1367, 1369 [2019] [internal quotation marks and citations omitted]; see Gaines Mar. & Servs., Inc. v CMS Mar. Stor., LLC, 176 AD3d 1534, 1535 [2019]). However, "[a] contract is ambiguous if the language used lacks a definite and precise meaning, and there is a reasonable basis for a difference of opinion" (Agor v Board of Educ., Northeastern Clinton Cent. Sch. Dist., 115 AD3d at 1048 [internal quotation marks and citation omitted]), as "when the contract, read as a whole, fails to disclose its purpose and the parties' intent" (Ellington v EMI Music, Inc., 24 NY3d 239, 244 [2014]; see Tomhannock, LLC v Roustabout Resources, LLC, 33 NY3d 1080, 1082 [2019]; cf. Gaines Mar. & Servs., Inc. v CMS Mar. Stor., LLC, 176 AD3d at 1535). Resort to extrinsic evidence is appropriate to resolve an ambiguity in contractual language (see Baff v Board of Educ. of the Fonda-Fultonville Cent. Sch. Dist., 169 AD3d at 1323).
It is significant that the lease makes no mention of the current ground-level system and does not expressly contemplate construction of the new underground system. The parties rely on several provisions in this 40-page, small print lease to support their claim that the other is responsible to construct and finance the underground stormwater detention system. In finding that defendant, as the tenant, was responsible, Supreme Court relied upon a provision in section 1.AC of the lease, entitled "Tenant's Improvements,"[FN2] which is defined as "[a]ny improvements, . . . trade fixtures, . . . signs and personal property installed and paid for by the [t]enant as set forth in Exhibit 'D.'" The court relied on the catchall phrase in that section, that, "[i]n addition, [t]enant's [i]mprovements shall include any and all work required for [t]enant to open and operate its business at the [d]emised [p]remises and which is not included in [l]andlord's [w]ork," which "shall be performed at [t]enant's sole cost and expense" (emphasis added). Plaintiff's principal argument is that the underground system is not listed as landlord work and, thus, it is the tenant's responsibility under this section. Notably, however, Exhibit D, also entitled "Tenant's Improvements," requires the landlord's prior approval before tenant improvements are made, but then refers specifically only to work on the building itself, not to the exterior. Moreover, when the work contemplated by "Tenant's Improvements" is spelled out in more detail in section 9.A of the lease, it is defined as "the right to make such alterations and improvements in the [d]emised [p]remises as may be necessary and proper for the conduct of its business . . ., excepting (a) structural alternations or improvements, (b) alterations to the heating, cooling, plumbing, or electrical systems, and (c) alterations, additions, or improvements to the exterior or storefront of the [d]emised [p]remises" (emphases added). This appears to exclude exterior work from the tenant's responsibility.
The landlord's work is spelled out in Exhibit C to the lease, which requires that it complete a list of 11 specified items of work on the building related to electricity, lights, heat and the like, although no exterior work is specified. At the end of the list, there is a provision requiring that all construction work comply with local codes and then a catchall phrase that "[t]enant, at tenant's sole cost, shall be responsible for any additional improvements required in connection with tenant's specified use of the leased premises that are imposed by local code." Plaintiff argued, and Supreme Court found, that, inasmuch as the underground stormwater detention system is not listed as landlord work and is required by local code, it was defendant's responsibility as the tenant under the foregoing lease provisions.
Although that is one reasonable interpretation of these provisions, there are several difficulties with this conclusion, including that the lease itself does not establish that an underground stormwater detention system is required by the local code for the contemplated exterior improvements or that it is defendant's business that necessitated this new system. Indeed, defendant disputes that an underground stormwater detention system is needed to open and operate its business or that, if it is needed, it is attributable to this business rather than to all of the tenants in common. Defendant does not contest that the applicable codes are incorporated into the lease, but it cannot be determined from the four corners of the lease, among other things, whether such underground system is required as a result of defendant's business (see Century Sur. Co. v All In One Roofing, LLC, 154 AD3d 803, 808 [2017], lv denied 31 NY3d 909 [2018]). Also, although "[l]andlord [w]ork" appears to be limited to improvements on the building, the "[t]enant's [i]mprovements" provision appears to exclude exterior alterations and improvements. Moreover, several other lease provisions call into question the foregoing interpretation espoused by plaintiff and adopted by Supreme Court.
Significantly, sections 1.F and 2 of the lease define the "Demised Premises," or leased premises, as a 3,200 square-foot portion of the building within the shopping center, "together with improvements and fixtures included in [l]andlord's [w]ork." Section 2 specifically provides that it "does not include the land beneath the improvements . . . or the parking lots" (emphases added). Section 2 gives the tenant "the non-exclusive right to use a portion of such space," presumably the parking lots, for its equipment serving the leased premises, including the drive-through and ordering stalls as shown on the attached site plan, which depicts only the leased building. Importantly, that provision then "expressly reserve[s]" to the landlord the right to install and repair and replace "such pipes, duct work, conduits, utility lines, tunneling, wires and the like" with regard to the building exterior and "below the [d]emised [p]remises as may be reasonably necessary or advisable for the serving of the [d]emised premises or other portions or the [s]hopping [c]enter" (emphases added). This would support, although not compel, the conclusion that defendant did not lease or assume responsibility for any underground area, and that any obligation to construct and pay for a new underground stormwater detention system fell exclusively to plaintiff.[FN3] The lease provisions governing the common areas could also support that conclusion.
Reading the lease as a whole, we find that it is ambiguous in that "there is a reasonable basis for a difference of opinion" as to the meaning of the contract language regarding which party is responsible for the upgrade to the stormwater detention system (Agor v Board of Educ., Northeastern Clinton Cent. Sch. Dist., 115 AD3d at 1048 [internal quotation marks and citation omitted]; see Harris v Reagan, 161 AD3d 1346, 1349 [2018]). To that end, it "fails to disclose . . . the parties' intent" on this point (Ellington v EMI Music, Inc., 24 NY3d at 244; see Tomhannock, LLC v Roustabout Resources, LLC, 33 NY3d at 1082; Baff v Board of Educ. of the Fonda-Fultonville Cent. Sch. Dist., 169 AD3d at 1323). In our view, "[i]t is not obvious how to reconcile these conflicting [lease] provisions" (Harris v Reagan, 161 AD3d at 1349). Thus, we cannot agree with Supreme Court's conclusion that the lease unambiguously imposed a contractual responsibility on defendant, as tenant, to contract and pay for a new stormwater detention system, or that defendant was in default of the lease for failing to submit plans to that end (cf. Gaines Mar. & Servs., Inc. v CMS Mar. Stor., LLC, 176 AD3d at 1536).[FN4]
Given the ambiguity in the lease, resort to parol or extrinsic evidence is proper to discern the parties' intent (see Kolbe v Tibbetts, 22 NY3d 344, 355 [2013]; Baff v Board of Educ. of the Fonda-Fultonville Cent. Sch. Dist., 169 AD3d at 1323; Monticello Raceway Mgt., Inc. v Concord Assoc., L.P., 129 AD3d 1183, 1185 [2015], lv denied 26 NY3d 913 [2015]; Agor v Board of Educ., Northeastern Clinton Cent. Sch. Dist., 115 AD3d at 1049).[FN5] Suffice it to say that the extrinsic evidence submitted does not resolve the questions of fact presented regarding the parties' intentions on this disputed issue.
In moving for summary judgment, plaintiff relied heavily on the affidavit of Joseph Dannible, a landscape architect involved in the review of the requirements for the site plan to comply with the Code of the Town of Clifton Park, specifically with regard to stormwater treatment. Dannible concluded that the existing system had to be replaced and that an underground stormwater detention system was "the most feasible method" to comply with local codes, and that this was "necessitated solely by" the exterior improvements and design required for defendant's business. However, even accepting his expert — albeit conclusory — opinion [FN6] regarding the most feasible method and the cause of the stormwater problem, Dannible does not explain when this conclusion was reached and, more to the point, whether it was understood by both parties prior to signing the lease that a new system would be needed, let alone their intentions regarding who was responsible to design and pay for it. Plaintiff also relied upon correspondence between the parties in June 2018, after the lease was signed, in which plaintiff asserted that the underground stormwater detention system fell under tenant work in the lease. Defendant's response to that correspondence was that it was not its responsibility and that it had no role in siting the current system, relying on correspondence from plaintiff's leasing officer that plaintiff is "doing the site work." That representation by plaintiff's agent was made in reply to defendant's message that plaintiff "will be installing the stormwater management system." As such, plaintiff's extrinsic evidence failed to resolve the lease ambiguity regarding responsibility for the new underground stormwater detention system, and did not "demonstrate the absence of any material issues of fact" in that regard (Stonehill Capital Mgt. LLC v Bank of the W., 28 NY3d 439, 448 [2016] [internal quotation marks and citation omitted]). Viewing the facts in the light most favorable to defendant, the nonmoving party, we find that plaintiff failed to "make a prima facie showing of entitlement to judgment as a matter of law" (id. [internal quotation marks and citation omitted]).
Even if we were to find that plaintiff satisfied its burden, shifting the burden to defendant, defendant "establish[ed] the existence of material issues of fact" so as to defeat plaintiff's motion (id. [internal quotation marks and citation omitted]). To that end, defendant submitted the affidavit of Bruce Ginsburg, a real estate broker involved in the lease negotiations who indicated that, in January 2018 prior to the lease being signed, plaintiff was aware that some of the exterior improvements were above the existing stormwater area. Ginsburg further explained that plaintiff's agent had represented, in an email he provided, that plaintiff "has agreed to do all needed work including the stormwater management area outside of the red box on the attached site plan." The attached site plan shows a red box around the exterior improvements adjacent to the building and the drive through, with a sizeable shaded area outside of the red box. Although the labels on that map cannot be discerned, Ginsburg represented that the map "did not have any stormwater area inside the red box" and, thus, plaintiff had assumed responsibility for the stormwater detention system. Given the foregoing, it was error to grant plaintiff's motion for summary judgment declaring that defendant was in breach of the lease, and defendant's counterclaims should not have been dismissed.
Lynch, J.P., Mulvey, Devine and Aarons, JJ., concur.
ORDERED that the order is reversed, on the law, with costs, plaintiff's motion for summary judgment denied and defendant's counterclaims reinstated.



Footnotes

Footnote 1: Although defendant opposed plaintiff's motion for summary judgment on the ground, among others, that it was premature and that further discovery is needed, defendant failed to identify any particular information that might be gained that was not then available and, thus, failed to make the requisite "evidentiary showing" to defeat the motion on this basis (Ivory Dev., LLC v Roe, 135 AD3d 1216, 1224 [2016] [internal quotation marks, emphasis and citations omitted]; see CPLR 3212 [f]).

Footnote 2: Where full word capitalization has been utilized in the lease, such capitalization has been omitted.

Footnote 3: Although the lease does not specify where the current ground-level stormwater detention basin is located, it appears from plaintiff's motion papers that it is located under the parking lot in an area where driving lanes were being installed, and that installation of expanded parking areas reduced the size of that basin. Plaintiff included a map of current conditions in its motion papers, but it is not possible for this Court to draw any conclusions therefrom. The disputed replacement system is apparently to be underground. One interpretation of the lease is that work on both of those underground areas was expressly reserved to plaintiff as the landlord.

Footnote 4: Defendant did not cross-move for summary judgment in its favor or request that Supreme Court search the record to determine that plaintiff was obligated under the lease to construct and pay for the new system, and does not request that this Court do so (see CPLR 3212 [b]).

Footnote 5: The lease contains a general merger clause, the purpose of which is to reflect that the lease "represents the entire understanding between the parties," which "require[s] full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing" (Matter of Primex Intl. Corp. v Wal-Mart Stores, 89 NY2d 594, 599 [1997] [internal quotation marks and citation omitted]). However, the ambiguity in the lease on the disputed issue permits consideration of extrinsic evidence with regard to the parties' intent and understanding (see Karol v Polsinello, 127 AD3d 1401, 1404 [2015]; Vivir of L I, Inc. v Ehrenkranz, 127 AD3d 962, 964 [2015]; cf. Schron v Troutman Sanders LLP, 20 NY3d 430, 436 [2013]; compare Judnick Realty Corp. v 32 W. 32nd St. Corp., 61 NY2d 819, 822 [1984]).

Footnote 6: Dannible's affidavit is presented as both a fact witness, as he was involved in the site plan approval process for this project, and as an expert witness with regard to local code requirements.