Hylan Ross, LLC v 2582 Hylan Blvd. Fitness Group, LLC (2022 NY Slip Op 04014)

Hylan Ross, LLC v 2582 Hylan Blvd. Fitness Group, LLC

2022 NY Slip Op 04014

Decided on June 22, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 22, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ANGELA G. IANNACCI, J.P.
SHERI S. ROMAN
LARA J. GENOVESI
WILLIAM G. FORD, JJ.

2019-14388
 (Index No. 151877/19)

[*1]Hylan Ross, LLC, etc., appellant, 
v
2582 Hylan Boulevard Fitness Group, LLC, etc., et al., respondents.

McLaughlin & Stern, LLP, New York, NY (Chester R. Ostrowski and Jason S. Giaimo of counsel), for appellant.
Olshan Frome Wolosky LLP, New York, NY (Thomas J. Fleming and Tara S. Richelo of counsel), for respondents.

DECISION & ORDER
In an action, inter alia, to recover damages for breach of a lease agreement, the plaintiff appeals from an order of the Supreme Court, Richmond County (Orlando Marrazzo, Jr., J.), dated December 2, 2019. The order granted that branch of the defendants' motion which was pursuant to CPLR 3211(a) to dismiss the complaint.
ORDERED that the order is affirmed, with costs.
The plaintiff is the successor in interest to BMN, LLC (hereinafter the landlord), which owned certain property on Staten Island. In March 2013, the landlord entered into a lease agreement with the defendant 2582 Hylan Boulevard Fitness Group, LLC, doing business as Planet Fitness (hereinafter the tenant), for the tenant to operate a health club and fitness facility on two floors of the property (hereinafter the premises). The landlord was to complete construction of the building prior to delivery of the premises. Section 7.01(b) of the lease (hereinafter the Approvals provision) provided, in pertinent part: "Landlord hereby agrees that Landlord, at Landlord's sole cost and expense, shall obtain any and all approvals, including any and all building permits, hereunder (collectively, the "Approvals") and obtain a Certificate of Occupancy (temporary or permanent[)] for the Building. Landlord shall have a period of eighteen (18) months after the Effective Date (the "Approval Period") to obtain the Approvals."
In the event the landlord was unable to timely obtain all approvals, the tenant had the right to terminate the lease. The defendant PFNY, LLC, guaranteed, inter alia, the payment of all base rent and common area costs for the first 10 years of the lease.
On or about March 6, 2015, the tenant sent the landlord a notice that it was terminating the lease due to the landlord's failure to obtain all approvals prior to the expiration of the Approval Period. The landlord rejected the notice, stating that it had timely obtained all approvals required to construct the building.
The plaintiff thereafter commenced this action alleging that the defendants breached the lease and the guaranty by purporting to terminate the lease when the landlord had timely obtained all "Approvals" contemplated by the Approval provision. The complaint alleged, among other things, that the parties specifically agreed that, in accordance with industry standards, it would be the tenant's responsibility to obtain certain permits, and other permits did not need to be obtained prior to substantial completion of construction.
The defendants moved, inter alia, pursuant to CPLR 3211(a)(1) and (7) to dismiss the complaint, arguing, among other things, that the lease unambiguously required the landlord to obtain all approvals, and that the plaintiff conceded that the approvals process was ongoing beyond the 18-month period set forth in the Approvals provision. In an order dated December 2, 2019, the Supreme Court granted that branch of the defendants' motion which was to dismiss the complaint. The plaintiff appeals.
"[A] contract is to be construed in accordance with the parties' intent, which is generally discerned from the four corners of the document itself. Consequently, 'a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms'" (MHR Capital Partners LP v Presstek, Inc., 12 NY3d 640, 645, quoting Greenfield v Philles Records, 98 NY2d 562, 569; see Ellington v EMI Music, Inc., 24 NY3d 239, 244). This rule has "special import in the context of real property transactions, where commercial certainty is a paramount concern, and where the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length. In such circumstances, courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include. Hence, courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" (Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d 470, 475 [alterations, citations, and internal quotation marks omitted]).
Extrinsic evidence is generally inadmissible to add to or vary the writing, and may not create an ambiguity where one does not exist (see Donohue v Cuomo, 38 NY3d 1, 12-13; Fini v Marini, 164 AD3d 1218, 1221). "Where a contract contains a merger clause, a court is obliged to require full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing" (Vivir of L I v Ehrenkranz, 127 AD3d 962, 964; see Schron v Troutman Sanders LLP, 20 NY3d 430, 436). However, where contract language is "reasonably susceptible of more than one interpretation," and thus ambiguous, extrinsic or parol evidence is permitted to determine the parties' intent as to the meaning of that language (Chimart Assoc. v Paul, 66 NY2d 570, 573; see Union Carbide Corp. v Affiliated FM Ins. Co., 16 NY3d 419, 425; Yarom v Poliform S.P.A., 153 AD3d 760, 761). Whether a contract is ambiguous is an issue of law for the court to decide (see Greenfield v Philles Records, 98 NY2d at 569).
Here, the plaintiff contends that, in light of the provisions of the lease which required the landlord to promptly commence work following receipt of the "Approvals," and which provided the landlord two years from that date to deliver the premises, the "Approvals" required by the Approvals provision included only those approvals which were necessary to commence construction, or at least did not include permits which generally are, or could only be, obtained after substantial completion of the building. The plaintiff contends that, at a minimum, the lease was ambiguous as to which permits were included in the "Approvals." The plaintiff's proffered limitation of "Approvals" to only those necessary to commence construction improperly adds a term and distorts the meaning of the Approvals provision (see Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d at 475). Moreover, any ambiguity regarding the timing of permits which allegedly could not be obtained prior to substantial completion of construction would not impact all of the outstanding permits. The plaintiff may not rely on the parties' communications and industry standards to modify the clear term of the lease that the landlord was responsible for obtaining the approvals (see Donohue v Cuomo, 38 NY3d at 12-13; 80-02 Leasehold, LLC v CM Realty Holdings Corp., 123 AD3d 872, 874; Emerald Equip. Sys., Inc. v Gearhart Bros. Servs., LLC, 115 AD3d 1187, 1189).
Additionally, to the extent that the plaintiff contends that there was an oral modification of the lease agreement regarding approvals, the plaintiff failed to sufficiently allege that there had been partial performance or reliance sufficient to defeat the no-oral modification clause of the written agreement (see Eujoy Realty Corp. v Van Wagner Communications, LLC, 22 NY3d 413, 427; Rose v Spa Realty Assoc., 42 NY2d 338, 343-344; Zukowski v Powell Cove Estates Home Owners Assn., Inc., 187 AD3d 1099, 1104). Accordingly, the clear terms of the lease utterly refute the plaintiff's allegation that the tenant improperly terminated the lease (see Ira & Larry Weinstein, LLC v Smart SMR of N.Y., Inc., 163 AD3d 641, 642).
Further, the written lease agreement, which constitutes a valid and enforceable contract between the parties, precludes recovery under the promissory estoppel cause of action, which arises out of the same subject matter (see Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 388; Pacella v Town of Newburgh Volunteer Ambulance Corps. Inc., 164 AD3d 809, 814; Hoeg Corp. v Peebles Corp., 153 AD3d 607, 610).
Accordingly, the Supreme Court properly granted that branch of the defendants' motion which was pursuant to CPLR 3211(a) to dismiss the complaint.
In light of our determination, we need not address the parties' contentions regarding the enforceability of the liquidated damages provision of the lease.
IANNACCI, J.P., ROMAN, GENOVESI and FORD, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court