**Printvision, Inc. v Caccese**

2025 NY Slip Op 31682(U)

May 8, 2025

Supreme Court, New York County

Docket Number: Index No. 160617/2023

Judge: David B. Cohen

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. DAVID B. COHEN** PART 58

*Justice*

-------------------------------------------------------------------------------X

PRINTVISION, INC.

                          Plaintiff,

                      - v -

CACCESE ESQ, CAROLYN M. et al

                       Defendants.

-------------------------------------------------------------------------------X

| INDEX NO. | 160617/2023 |
| --- | --- |
| MOTION DATE | 02/22/2024 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25

were read on this motion to/for                   DISMISSAL            .

      In this legal malpractice action commenced by Printvision Inc., defendants Carolyn B. Caccese, and law firm Salenger, Sack, Kimmell & Bavarro, LLP (SSKB) (together defendants) move, pursuant to CPLR 3211(a)(1) and (a)(7), to dismiss the complaint. Plaintiff opposes the motion.

## PERTINENT FACTS

      This action arises from defendants' representation of plaintiff in late 2019, or early 2020, when plaintiff retained Caccese and her firm SSKB to represent it in bringing an action for declaratory relief against Travelers Casualty Insurance Company (Travelers) for refusing to provide coverage for certain business losses (the DJ action) (NYSCEF 2).

### A.     *DJ Action (NYSCEF 9)*

      The DJ action arose out of a contractual relationship between plaintiff and non-party Bels Technology (Bels) pursuant to which, between May 9, 2018, and June 11, 2018, plaintiff processed multiple orders for Bels for custom "thumb-drives." During this time, Bels claimed it paid for, and did not receive, one of these orders and filed a claim with its credit card processor,

**160617/2023  PRINTVISION, INC. vs. CACCESE ESQ, CAROLYN M. ET AL**        **Page 1 of 13**
  **Motion No.  001**

1 of 13

[* 1]

Stripe, for reimbursement. Stripe then impounded the amount Bels paid for the order in plaintiff's account. After plaintiff contacted Stripe and provided proof of delivery, Stripe released the impounded funds from plaintiff's account. However, shortly after Bels placed its final order with plaintiff, Stripe informed plaintiff that Bels had recontacted Stripe and denied placing or receiving any orders from plaintiff. Although plaintiff provided proof of such orders, Stripe debited all amounts it had paid to plaintiff on Bels's behalf and froze plaintiff's credit card accounts (NYSCEF 9).

At all relevant times, when Bels placed orders with plaintiff, plaintiff was insured by Travelers under a contractual insurance policy agreement (the insurance agreement) (NYSCEF 10). After Stripe debited plaintiff's account for the amount Bels claimed it had lost, plaintiff submitted a claim to Travelers seeking $127,326.30 due to the alleged theft and loss of property, receivables, and cash resulting from the purported fraudulent transactions by Bels (NYSCEF11). On July 12, 2018, Travelers issued a letter to plaintiff disclaiming coverage, stating that the claimed loss was excluded under the "voluntary parting" provision of the policy agreement (*id.*).

In or around late 2019 or early 2020, plaintiff retained defendants for representation in an action against Travelers, arising from Travelers' denial of coverage for plaintiff's claim (NYSCEF 2).

On October 9, 2020, on behalf of plaintiff, Caccese filed a summons and complaint against Travelers, seeking damages and a declaratory judgment (NYSCEF 2). On January 28, 2021, the action was dismissed on the grounds that plaintiff's claim was barred by the applicable statute of limitations (NYSCEF 16).

160617/2023   PRINTVISION, INC. vs. CACCESE ESQ, CAROLYN M. ET AL
Motion No. 001

Page 2 of 13

2 of 13

### B.    Plaintiff's Complaint (NYSCEF 2)

On October 31, 2023, plaintiff commenced this action against defendants, alleging claims for legal malpractice and promissory estoppel.  The first cause of action for malpractice against Caccese alleges that she owed plaintiff a duty to exercise a standard of care and diligence expected of a reasonably competent attorney in pursuing plaintiff's claim against Travelers, and that by failing to timely file the action, Caccese breached this duty.  Plaintiff alleges that but for this breach, it would have prevailed and recovered its losses from Travelers under the policy agreement.

In its second cause of action for *respondeat superior* against SSKB, plaintiff asserts that Caccese was an attorney at SSKB's law firm, and that SSKB is therefore liable for her malpractice.

In its third cause of action for promissory estoppel against Caccese, plaintiff alleges that Caccese represented to plaintiff that she could obtain a quick decision granting declaratory relief against Travelers, and that but for this promise, plaintiff would not have authorized Caccese to file the DJ action against Travelers and would have additionally pursued alternative action to have its credit card account reinstated.  Plaintiff claims it reasonably relied on these representations and thus refrained from taking other action.

In its fourth cause of action, plaintiff alleges promissory estoppel against SSKB under the doctrine of *respondeat superior*.

### C.    The Insurance Agreement (NYSCEF 10)

The insurance agreement included two discrete policies, the Businessowners Property Coverage policy (the BPC policy) and the Commercial General Liability policy (the CGL policy).

160617/2023   PRINTVISION, INC. vs. CACCESE ESQ, CAROLYN M. ET AL         Page 3 of 13
Motion No.  001

3 of 13

[* 3]

The BPC policy provides, in relevant part: "Coverage. We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss." Covered Property includes the business's personal property "located in or on the buildings described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises, including . . . 'Money' and 'Securities." The Declarations identify the premises as plaintiff's business address at 31 W 34th Street, Suite 8041, New York, New York.

The BPC policy also covers "theft," which is defined as "any act of stealing," with reimbursement limitations dependent on the type of property that was lost due to theft (the theft provision). It also covers, "loss resulting directly from 'forgery' or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in money that are made or drawn by or drawn upon you (the forgery provision). Forgery means "the signing of the name of another person or organization with intent to deceive."

The BPC policy excludes coverage for any loss caused by "voluntary parting with any property by you or anyone else to whom you have entrusted the property" (the voluntary parting exclusion).

The CGL policy provides that Travelers "will pay those sums that the insured becomes legally obligated to pay as damages because of " 'property damage' to which the [insurance agreement applies]." Property damage is defined as "physical injury to tangible property, including all resulting loss of use of that property. . .".

## LEGAL STANDARD AND ANALYSIS

CPLR 3211(a)(7) provides that a party may move for dismissal "on the ground that the pleading fails to state a cause of action." Dismissal of a complaint pursuant to CPLR 3211(a)(7)

160617/2023  PRINTVISION, INC. vs. CACCESE ESQ, CAROLYN M. ET AL            Page 4 of 13
   Motion No.  001

4 of 13

[* 4]

requires that the pleading be afforded a liberal construction and that the court accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]; *see CSC Holdings, LLC v Samsung Elecs. Am., Inc.*, 192 AD3d 556 [1st Dept 2021]). "Dismissal of the complaint is warranted if the plaintiff fails to assert facts in support of an element of the claim, or if the factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery" (*Connaughton v. Chipotle Mexican Grill, Inc.*, 29 NY3d 137, 142 [2017] [citations omitted]). The test is "whether the proponent of the pleading has a cause of action, not whether he has stated one" (*Leon,* 84 NY2d, at 87-88).

Pursuant to CPLR § 3211(a)(1),"[a] party may move for judgment dismissing one or more causes of action asserted against him on the grounds that … a defense is founded upon documentary evidence[.]" Dismissal is "warranted only if documentary evidence submitted utterly refutes plaintiff's factual allegations, and conclusively establishes a defense to the asserted claims as a matter of law" (*Kolchins v Evolution Markets, Inc.*, 128 AD3d 47 [1st Dept 2015], *affd*, 31 NY3d 100 [2018] [internal quotations omitted]).

## I.     First Cause of Action: Legal Malpractice

"A plaintiff's burden of proof in a legal malpractice action is a heavy one" (*Lindenman v Kreitzer*, 7 AD3d 30, 34 [1st Dept 2004]).

> A claim for legal malpractice requires that a plaintiff allege facts that, if proven at trial, would demonstrate that the attorney "failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession and that the attorney's breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages"

(*Kaplan v Conway & Conway*, 173 AD3d 452, 452 [1st Dept 2019] [citations omitted]).

**160617/2023   PRINTVISION, INC. vs. CACCESE ESQ, CAROLYN M. ET AL**                    **Page 5 of 13**
  **Motion No.  001**

5 of 13

Generally, attorneys have a duty to advise a client that a statute of limitations period exists (*Mortenson v Shea*, 62 AD3d 414 [1st Dept 2009]). The failure to commence an action within the applicable time frame provided by statute may constitute the breach of an attorney's duty, resulting in malpractice (*Women's Integrated Network, Inc. v Anderson Kill P.C.,* 137 AD3d 404 [1st Dept 2016]; *see Darby & Darby, P.C. v VSI Intern., Inc.,* 95 NY2d 308 [2000]). To establish negligence, a plaintiff must plead specific factual allegations establishing that but for the attorney's deficient representation, it would have prevailed in the underlying claim (*see Magassouba v Cascione, Purcigliott & Galluzzi P.C.,* 178 AD3d 509 [1st Dept 2019]; *O'Callaghan v Brunelle,* 84 AD3d 581 [1st Dept 2011]). The failure of the plaintiff to adequately allege proximate cause and therefore negligence on the part of the defendant attorney requires dismissal of the malpractice claim (*Jarmuth v Wagner*, 219 AD3d 1248 [1st Dept 2023]; *see Tydings v Greenfield, Stein & Senior, LLP*, 43 AD3d 680 [1st Dept 2007], *affd* 11 NY3d 195 [2008]).

Here, plaintiff pleaded that Caccese owed and breached her professional duty by failing to timely file the DJ action, causing plaintiff damages. Plaintiff alleges that it would have succeeded and recovered its losses from Travelers had she filed its lawsuit before the expiration of the statute of limitations. As defendants do not deny the allegation that Caccese failed to timely file plaintiff's DJ action, the remaining inquiry is whether, but for that failure, plaintiff would have had a favorable outcome (*see Women's Integrated Network, Inc.*, 137 AD3d at 450).

### *BPC and CGL Policies*

It is well-established that a policyholder bears the initial burden of showing that the insurance contract covers the loss (*see Women's Integrated Network, Inc.,* 137 AD3d 404; *Moleon v Kreisler Borg Florman Gen. Const. Co., Inc.*, 304 AD2d 337 [1st Dept 2003]). The

burden then shifts to the insurer to prove that the loss was excluded from coverage under the policy (*Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 AD2d 1, 6 [1st Dept 2002]). "When an insurer seeks to disclaim coverage on the ... basis of an exclusion, ... the insurer will be required to provide a defense unless it can demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, in toto, are subject to no other interpretation" (*Dormitory Auth. v RLI Ins. Co.*, 191 AD3d 592 [1st Dept 2021]). "[A]n insurance policy, as with any written contract, must be accorded [its] plain and ordinary meaning" (*Castlepoint Ins. Co. v Southside Manhattan View LLC*, 179 AD3d 507 [1st Dept 2020]) "Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent, or where its terms are subject to more than one reasonable interpretation" (*Universal Am. Corp. v Natl. Union Fire Ins. Co. of Pittsburgh, Pa.*, 25 NY3d 675, 680 [2015] [internal citations omitted]). "If the terms of a policy are ambiguous, [] ambiguity must be construed in favor of the insured and against the insurer" (*White v Cont. Cas. Co.*, 9 NY3d 264 [2007]).

Defendants argue that plaintiff fails to establish proximate causation because its losses were not covered by either the BPC or the CGL policies. Plaintiff reasserts that it adequately pleaded "but for" causation because the policy agreement, as a whole, is ambiguous and therefore provides coverage.

The BPC policy provides coverage for "direct physical loss of or damage to property" that is located within or near the insured premises, including the business's "money" and "securities." Plaintiff does not allege that the lost property at issue—its thumb-drives and lost funds—were located on or near the insured premises at the time of the loss, nor does it allege that the property was physically lost or damaged. In the DJ action, plaintiff pleaded it sent the

[* 7]

thumb-drives to Bels and provided Stripe with receipts confirming such delivery, thereby acknowledging the property had left the premises. Even assuming the thumb-drives had not left its premises, plaintiff does not allege any loss due to their physical damage.

Moreover, courts interpreting similar provisions have consistently held that funds in a bank account do not constitute physical property susceptible to direct physical loss or damage (*Harvard St. Neighborhood Health Ctr., Inc. v Hartford Fire Ins. Co.*, 2015 WL 13234578 [D Mass 2015] ["loss of money or funds are not covered under insurance policies that limit losses to direct physical loss or damage]"; *see Medavera, Inc. v. Travelers Cas. Ins. Co. of Am.*, 2019 WL 5686713, at *3 [WD Mo. 2019] [insured did not suffer a direct physical loss or damage when funds were embezzled from bank account]; *see also Florists' Mut. Ins. Co. v Ludy Greenhouse Mfg. Corp.*, 521 F Supp 2d 661, 680 [SD Ohio 2007] ["funds deposited into a bank account do not have a 'physical' existence and, thus, are not susceptible to physical loss or damage"]).

Because the thumb-drives were not on or near the insured premises at the time of the alleged loss and were not physically damaged, and because the lost funds, being intangible and lacking physical form, do not qualify as covered property, neither are within the scope of the BPC policy's coverage. Accordingly, plaintiff does not demonstrate that its losses are covered under the BPC policy.

Under the CGL policy, Travelers is obligated to pay damages where the insured becomes legally obligated to pay for unintended and unexpected property damage. The policy defines property damage as "physical injury to tangible property, including all resulting loss of use of that property." Here plaintiff's losses do not result from physical injury to property, but rather from Bels's alleged fraud. As such, plaintiff fails to show that any loss of use of its thumb-drives

160617/2023  PRINTVISION, INC. vs. CACCESE ESQ, CAROLYN M. ET AL
Motion No. 001

Page 8 of 13

8 of 13

[* 8]

and its credit card accounts are covered under the CGL policy (*see Roundabout Theatre Co., Inc. v Cont. Cas. Co.,* 302 AD2d 1 [1st Dept 2002] [policy language unambiguously required physical damage to trigger coverage]).

### *Travelers Policy Disclaimer*

Even assuming that plaintiff established that its losses were covered by the policy agreement, defendants contend that plaintiff fails to show causation as a matter of law because, under a plain reading of the voluntary parting exclusion, Travelers properly disclaimed coverage for plaintiff's losses.

Plaintiff opposes, arguing that the interplay between the forgery and theft provisions, and the voluntary parting exclusion creates ambiguity as to whether the losses were covered under the policy agreement. Because the policy agreement is ambiguous, plaintiff maintains it would have prevailed in the DJ action.

In reply, defendants reiterate that while the theft provision may provide coverage under the policy agreement, the policy unambiguously excludes any loss resulting from theft if the property has already been voluntarily parted with. Defendants further contend that the forgery provision does not apply to plaintiff's losses.

Here, plaintiff neither alleges nor provides evidence of losses resulting from forgery. Although Bels may have fraudulently denied engaging in transactions with plaintiff, Bels did not sign or alter the name of another person on a check or promissory note with intent to deceive. Read plainly, "forgery," as defined in the insurance agreement, does not apply to plaintiff's losses. In any event, plaintiff's reliance on *Morris James LLP v Cont. Cas. Co.* (928 F Supp 2d 816, 823–25 [D Del 2013]) is misplaced, as that case involved a counterfeit check containing a

160617/2023 PRINTVISION, INC. vs. CACCESE ESQ, CAROLYN M. ET AL Page 9 of 13
Motion No. 001

9 of 13

[* 9]

forged signature, bringing the loss within the scope of the policy's forgery coverage—facts not present here.

Next, while the policy provides coverage for losses from certain types of theft, it expressly excludes all losses, including theft, arising after the insured has voluntarily parted with the property. In *Martin, Shudt, Wallace, Dilorenzo & Johnson v Travelers Indem. Co. of Conn.*, the Northern District of New York applied the same voluntary parting exclusion as here and held that coverage was barred where a law firm, after receiving a fraudulent cashier's check it believed to be payment of client funds, voluntarily wired money to a third party at the client's direction (2014 WL 460054, *1 [NDNY Feb. 5, 2014]). In the firm's action against Travelers to recover the amount lost due to the fraudulent check, the court found that the firm's reliance on a misrepresentation did not "alter the voluntariness of [the initial] parting" (*id.*). It further held that plaintiff's discussion of theft was irrelevant to the discussion because the policy unambiguously "excludes losses caused by voluntary parting with property, regardless of whether those losses resulted from theft" (*id*. at *4).

Likewise, here, plaintiff willingly sent the thumb-drives to Bels, thereby voluntarily parting with the property. That Bels later denied receiving the thumb-drives—and that Stripe subsequently debited plaintiff's account—does not alter the voluntariness of the initial transfer. As in *Martin*, plaintiff's loss resulted from a fraudulent scheme, but the transfer of property itself was made voluntarily (*see also Global Coverage Inc. v The Charter Oak Fire Ins. Co.,* 2010 WL 9600143 [Sup Ct, NY County 2010] [voluntary parting exclusion applied where insured's funds were voluntarily deposited into escrow account later seized by bank]; *Schweet Linde & Coulson, PLLC v Travelers Cas. Ins. Co.*, 2015 WL 3447242 [WD Wash 2015, No. C14-1883RSL]

[voluntary parting exclusion applied where insured transferred funds based on fraudulent instructions]).

Because plaintiff's losses were not covered by the insurance agreement, and Travelers properly disclaimed coverage, plaintiff would not have prevailed in the DJ action. As a result, plaintiff cannot establish the necessary proximate cause for its malpractice claim against defendants. Accordingly, defendant's motion to dismiss plaintiff's first cause of action, based on lack of coverage under the voluntary parting exclusion, is granted.

### III.   Third Cause of Action as Against Caccese: Promissory Estoppel

In its third cause of action, plaintiff pleaded promissory estoppel, asserting that Caccese represented she could obtain a quick decision granting declaratory relief against Travelers, and that, but for this representation, plaintiff would not have authorized defendants to file the DJ action. Plaintiff alleges it reasonably relied on Caccese's representation and therefore refrained from taking other steps to recover its lost funds and to reinstate its credit card account.

Defendants deny that Caccese made any guarantee to plaintiff regarding the successful outcome of the DJ action and assert that plaintiff's promissory estoppel claim is duplicative of its legal malpractice cause of action.

Plaintiff opposes, arguing its claim is not duplicative because, unlike the legal malpractice claim, it is not dependent on the existence of insurance coverage, but rather reliant on Caccese's promise of action and quick relief.

In reply, defendants reassert their previous arguments and argue that plaintiff cannot state a claim for promissory estoppel because it provided no documentary evidence of any promise, and even if it did, plaintiff cannot allege unconscionability given the unsuccessful outcome of the

160617/2023   PRINTVISION, INC. vs. CACCESE ESQ, CAROLYN M. ET AL          Page 11 of 13
  Motion No.  001

11 of 13

[* 11]

DJ action.  Defendants further argue plaintiff's reliance on her alleged promise was not foreseeable or reasonable given the uncertainty of results in litigation.

Under New York law, "[t]he elements of a promissory estoppel claim are: (i) a sufficiently clear and unambiguous promise; (ii) reasonable reliance on the promise; and (iii) injury caused by the reliance" (*Castellotti v Free*, 138 AD3d 198 [1st Dept 2016]).  "The existence of a valid and enforceable contract between the parties precludes recovery under a promissory estoppel cause of action arising out of the same subject matter" (*Pacella v Town of Newburgh Volunteer Ambulance Corps. Inc.*, 164 AD3d 809, 814 [2d Dept 2018]; *see also Hylan Ross, LLC v 2582 Hylan Blvd. Fitness Group, LLC*, 206 AD3d 893 [2d Dept 2022]).

Here, there is no dispute that the parties executed a valid retainer agreement concerning defendants' representation of plaintiff in the DJ action.  Because plaintiff's promissory estoppel claim arises from the same subject matter as its legal malpractice claim—namely, defendants' legal representation in the claim against Travelers— recovery under promissory estoppel is barred as a matter of law (*see Pacella*, 164 AD3d at 814).

### IV.     Second and Fourth Cause of Action as Against SSKB: *Respondeat Superior*

In its second cause of action, plaintiff pleaded that, under the doctrine of *respondeat superior*, SSKB is vicariously liable for the Caccese's legal malpractice.  In its fourth cause of action, plaintiff pleaded SSKB is responsible for the misrepresentations Caccese made when promising she could obtain a quick decision granting declaratory relief against Travelers.

Because plaintiff's first and third causes of actions are dismissed, its causes of actions against SSKB's under the doctrine of *respondeat superior* are also dismissed.

Accordingly, it is hereby

ORDERED that defendants' motion to dismiss is granted in its entirety, and the complaint

is dismissed, and the clerk is directed to enter judgment accordingly.

20250508170841DBCOHENB6096DD7A0F041EE828989154E4DB414

| **5/8/2025** | | **DAVID B. COHEN, J.S.C.** |
| --- | --- | --- |
| **DATE** | | |

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION |
| --- | --- | --- | --- | --- |
| | X | GRANTED | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

160617/2023   PRINTVISION, INC. vs. CACCESE ESQ, CAROLYN M. ET AL
Motion No.  001

Page 13 of 13

13 of 13

[* 13]